Case 2:23-cv-00269   Document 16   Filed on 01/08/24 in TXSD   Page 1 of 16

United States Courts
Southern District of Texas
FILED
JAN 08 2024
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

JAMES LOGAN DIEZ
Vs.
TDCJ-CID

Case No. 2:23-CV-00269

## PLAINTIFF'S MORE DEFINITE STATEMENT

To the Honorable Court:

Comes Now PLAINTIFF and hereby complies with the ORDER of this Court issued December 21, 2023, to specifically respond to the following Questions:

— I —

(a) "When did You arrive at McConnell Unit?"
— Plaintiff arrived on McConnel Unit on August 22, 2022.
However, he was transported to TDCJ-CID's intake, Byrd Unit, on July 8, 2022; transferred to Memorial Unit on August 15, 2022; then to McConnell Unit 22 Aug. 2022.

(b) Plaintiff has been continuously confined at the McConnell Unit since his initial arrival on 22 Aug. 2022.

— II —

(a) "As noted above, the TDCJ website shows that you were convicted on May 17, 2022, of two felony charges in Burnet County. Explain why you ~~believe~~ do not believe you are in TDCJ custody as a convicted inmate."

— The reason i believe i am more closely compared to a Pretrial Detainee, is a fact of Law.

"(...) State convictions are final ( ) when the availability of direct appeal to the State Courts has been exhausted and the time for filing a petition for a writ of Certiorari has elapsed

page 1 of 16

or a timely petition has been finally denied."
Beard v. Banks, 542 U.S. 406, 411 (2004)
"(T)he mere entry of a conviction by the Trial Court <u>does not</u> render a judgment 'final.'" Mitchell v. State, 473 S.W. 3d 503, 517 (Tex. App. 8th Dist. 2015) citing Texas Lottery Commission v. First State Bank of Dequeen, 325 S.W. 3d 628, 635 (Tx. Sup. Ct. 2010); and, the Texas Court of Criminal Appeals, likewise, follows this Rule of Law. see e.g. Johnson v. State, 784 S.W. 2d 413, 414 (Tx. Cr. App. 1990) ("A conviction from which an appeal has been taken <u>is not considered</u> final until the appellate Court affirms the conviction and issues its mandate.")

Had not the Texas Congress unconstitutionally adopted a statutory Legislative denial of Appeal Bond to <u>ALL</u> Sentenced to over (10) years in prison, regardless of <u>other factors</u> which the Supreme Court held should be considered BY A JUDGE, this Plaintiff <u>would</u> presently be free on Bond rather than held in a maximum security facility that had the highest murder rate in the State's 108 Facility System over a (12) month period [5 of the TDCJ-CID's 16 murders — 31.16% — were committed on McConnell].

Under Texas Statutory Law — TDCJ-CID must either move <u>sentenced</u> prisoners, who are not on appeal bond, from the County Jail to a TDCJ-CID facility within (45) days, or pay the County a per diem fee for holding them. So — WITHOUT a "<u>FINAL</u> Conviction" (my Case being on Appeal) Plaintiff is technically closer to a Pre-Trial Detainee who is denied Bond, than to a <u>finally convicted</u> Felon who has no Bond. The Appellate Court can Reverse my conviction tomorrow — could order Acquital even — and Plaintiff <u>IS</u> still a qualified and Registered Voter — hence, Plaintiff is legally entitled to Rights and Priviledges grater than those "<u>finally convicted</u>" of their charged offenses.

— III —

"Name the TDCJ official or officials you believe is/are responsible for implementing and enforcing the 'digital mail/scanned mail' policy at all the TDCJ-CID prisons, including the McConnell Unit. Describe in detail the

page 2 of 16

"types of general and personal mail that are required to be scanned by the private scanning company."

PART A — Plaintiff <u>doesn't have a clue</u> what the names of the Mailroom Supervisors are on <u>other</u> TDCJ-CID Prisoner housing facilities are; and, has absolutely <u>NO</u> way to find out except DISCOVERY Questionaire submitted to Defendant — McConnell Unit Mailroom Supervisor is Ms Salles, but Plaintiff is aware of between 98-108 prison facilities under Defendant's Authority, and is not priviledged to know Employees' identities or Jobs thereon.

Additionally — Plaintiff is likewise without knowledge of the identities of the Members of the Texas Prison Board; the Director's Mail Services Coordinator/Coordinator's Panel; The Executive Director of TDCJ; or the current Director of the TDCJ-CID — any or all of whom may bear part/all the responsibility for implementing and enforcing the Policy at Issue (?). The <u>ONLY</u> way <u>Plaintiff</u> will be given the relevant Names and Job positions would be by Discovery under Court Order.

PART B — As of the date this Complaint was filed, with the CLERK of this Court (19 Oct. 2023), the Policy Rules have been, <u>according to Ms Salles</u>, revised THREE times — so Plaintiff can <u>NOT</u> give Oath that the following is <u>STILL</u> true (?) — however, to Plaintiff's understanding as of this below signed date:

* The <u>ONLY</u> mail currently required to be processed by scanning company is "PERSONAL CORRESPONDENCE," photographs, and greeting cards from "Family Members and Friends"; and,
* there is <u>NO</u> clear parameters established as to whom qualifies as a "Friend."

Plaintiff specifically <u>ASKED</u> if <u>Readers</u> of his

page 3 of 16

Articles, Essays, etc. (whom are total strangers to Plaintiff usually and NOT always Fans) count as a "Friend"? Ms Salles was uncertain, but said <u>it would probably be considered "by Huntsville"</u> that anyone reading my published works will be in the "Friend category." (Not true!)
Again — Plaintiff swears NO Oath to the accuracy of this information, because TDCJ-CID officials have NOT, at this date, published any Final Rules to the prisoner population.

— IV —

<u>Part A</u> — "Does the 'digital mail/scanned mail' policy include provisions detailing the time frame upon which mail is to be scanned and available on the tablets for viewing?"
— As of this date, Defendant has NOT published any clear or <u>official</u> Policy to the Prisoner population <u>per se</u>; and, Plaintiff is statutorily prohibited from obtaining whatever Contract/Policy Administrators have currently in place. However —
ON THE TABLET'S "FYI" App, under the "Digital Mail FAQ" heading, at page 2, it has as response to General Question 6 — "<u>Mail will be available within three business days</u>;" (response to question "how quickly will I receive my mail?").
This same "in three business days" language is also under the "Digital Mail Rollout!" heading.

<u>Part B</u> — "In other words, is the TDCJ Bulletin referenced by you part of the policy or something separate?"
— It is the instructions and information published to Prisoners' tablets by Defendant; but whether such accurately reflects actual "Offical Policy", which may be given the Court by Defendant, Plaintiff cannot say?

<u>Part C</u> — "Does the 'digital mail/scanned mail' policy include

page 4 of 16

" the provision referencing when stored mail is to be destroyed or is that something separate?"

— Again, ON THE TABLET's FYI App, under the "Digital Mail FAQ/Digital Mail Rollout!" headings, it states:

"All incoming and outgoing correspondence is subject to delivery, inspection, and rejection. Scanned mail is stored for 90 days before professional disposal. Should <u>Senders</u> wish to receive their physical mail back after scanning, they should include a self-addressed envelope in their correspondence." (underlined emphasis by Plaintiff)

\* Plaintiff would point out there is <u>NOTHING</u> on the tablet to provide the <u>Prisoner Recipient</u> a means to save his original physical mail from destruction.

— V —

<u>Part A</u> — "Describe the process by which you are able to view scanned mail on the tablets?"

— IF/WHEN the Securus Wi-Fi modems and Server are properly functioning and synched with the tablet (which varies from location to location in the Facility); an eMessage appears in the Messages App notifying of attached correspondence in the form of a jpeg photo(s) of the letter's page(s) front and back and the envelope front and back. The jpeg file can be opened in the App — the image exceeds the screen and must be reduced in size to see a full page, hence, miniturizing the font. In a few cases the image is fuzzy or blurred to the point of illegibleness; and, often letters that are lengthy (8-15 pages) will be missing 1-4 pages which failed to download due to an intermittent Wi-Fi signal.

<u>Part B</u> — "Do you have use of the tablet at all times?"
— NO. The Securus Wi-Fi goes off and on with a regularity for starters; and, when it's off the ONLY things available are games, movies, and TV shows that were downloaded; and, the Radio App that uses the headphone cord as an antenna.

Also, while in punitive solitary and/or "Tablet restriction", an Inmate's tablet is taken from him; and, if a tablet malfunctions, it takes weeks to receive a replacement.

Plaintiff would ask the Court take note of the FACT that mail has NEVER been denied to a TDCJ-CID Prisoner in ANY type of solitary and/or while on priviledges restriction (except if said punishment involved violation of correspondence rules); whereas when they take the tablet, they necessarily suspend receipt of personal mail — other, physical, correspondence is still delivered even in punative solitary confinement.

<u>Part C</u> — See Answer to "Part B" above, on question: "Are tablets always available for inmate to view scanned mail?"

<u>Part D</u> — "Are you able to save the scanned mail so that you can view it at any time?"
— As long as the Wi-Fi, server, and tablet are all functioning; the jpeg images can be saved to the Gallery App on the tablet, Yes.

<u>Part E</u> — "Are there any limitations on being able to either make paper copies of the scanned mail or writing the contents onto paper?"
— Yes and No. As stated earlier, Plaintiff (and other similarly situated Prisoners) have NOT been provided any digital mail rules of static

page 6 of 16

content. However, the last time Plaintiff had checked with Unit Mailroom Staff, they informed him they (a) do NOT provide print-outs of any personal correspondence; and, (b) they do NOT provide color printouts of photographs — only black & white images on standard copy paper.

And, of course, anyone who has paper and/or pen or pencil would be able to hand copy text off the tablet screen (assuming the tablet remains on and no "glitch" deletes it).

### — VI —

"State in specific detail the applicable policy regarding how you can preserve the letters sent to the private scanning company? Is this policy part of the overall 'digital mail/scanned mail' policy?"

— There is NO "applicable policy" that Plaintiff is aware of, per se. One Mailroom Employee (name unknown) told Plaintiff if he sent the scanning company sufficient postage and a pre-addressed envelope to a Third Party, the company would forward Plaintiff's physical letters to the Third Party. However, an inquiry letter regarding this matter, sent to the scanning company in October 2023 and no response has been received to date.

So, again, Plaintiff can take no Oath as to the existence/non-existence of any Policy or lack thereof (without being allowed Discovery).

### — VII —
### [Regarding Time-Delivery Delays]

| # | Sender's Name | Relationship | Postmark Date | Received on Tablet | # Dys |
|---|---|---|---|---|---|
| 1 | Angus Maclean | Church Rep. | 08/17/2023 | 09/13/2023 | 27 |
| 2 | Jackie Darlene Daniels | Friend | 09/01/2023 | 10/17/2023 | 46 |
| 3 | First State Bank | Statement | 08/31/2023 | 10/19/2023 | 49 |

| #  | Sender's Name | Relationship | Postmark Date | Received on Tablet | # Dys |
|----|---------------|--------------|---------------|--------------------|-------|
| 4  | FIRST STATE BANK | CD Statement | 09/02/2023 | 10/20/2023 | 48 |
| 5  | Beatrice Massoth | Friend | 08/30/2023 | 11/07/2023 | 68 |
| 6  | Angus MacLean | Church Rep. | 09/28/2023 | 11/28/2023 | 61 |
| 7  | ABSOLUTE INSIGHT | Clerical Service | (no postmark) | 11/28/2023 | unk |
| 8  | Prisoner Express/DAL | Publication | 10/18/2023 | 11/30/2023 | 43 |
| 9  | ABSOLUTE INSIGHT | Clerical Service | 10/25/2023 | 11/30/2023 | 36 |
| 10 | Prisoner Express/D.A.L. | Reader's Letter | 10/05/2023 | 11/30/2023 | 56 |
| 11 | FIRST STATE BANK (letter) | V-P Nathan Brown | 10/23/2023 | 12/02/2023 | 40 |
| 12 | Texas Health & Human Services | Time Sensitive Form | 09/05/2023 | 12/04/2023 | 90 |
| 13 | Jackie Darlene Daniels | Friend | 10/02/2023 | 12/05/2023 | 64 |
| 14 | Burnet Central Appraisal Dist. | Tax Pymt Receipt | 10/02/2023 | 12/08/2023 | 67 |
| 15 | Walk In Those Shoes | Charity Org. | (no postmark) | 12/13/2023 | unk |
| 16 | Returned To Sender | undeliverable | 10/08/2023 | 12/18/2023 | 71 |

* Above chart Answers: "When were each of these letters [re: lengthy delay] postmarked?" "When were each of these letters made available on the tablet for your viewing?" "Were any of those letters responsive to the articles and essays you have published?"

  * As indicated above, only (1) Reader has managed to get a letter to me during the period of digitalized mail. Also,
  * Delay periods between postmark and appearance on the tablet has been from (27) to (90) days.

Part VII (A) — "Did You have any issue or problem viewing these ( ) letters on the tablet?"

— Yes. Letters #8, only half the pages were scanned and transmitted to my tablet; and, the "Time Sensitive" material in letter #12 had expired by the time it appeared on my tablet.

Part VII (B) — "Are prison officials able to access your scanned mail on the tablet."

— Yes. Access it and/or block delivery.

Part VII (C) — "Why do you believe it took so long from the postmark date to the time you were able to view those letters on the tablet?"
— Any Answer Plaintiff provides hereto is merely an "Educated Guess" based on general knowledge and observation.

(5) days can be attributed to U.S. Postal Service delivery norms from Postmark to Scanning Company's P.O. Box. Some delay may be due to "bottlenecking" at the scanning company(?), but Plaintiff suspects the bulk of the delay is at the Unit Mailroom?

McConnell Unit's Mailroom Supervisor informed this Plaintiff that the scanned mail is FIRST transmitted to a TDCJ-CID computer server, and placed on "hold" until the Unit Mailroom Staff can "visually scan the content text for any communication or images which violate the correspondence rules." IF no objectional content is found, the censoring Employee allows the mail to be delivered to the recipient Prisoner's tablet.

The majority of McConnell Unit's Mailroom Staff are near, at or past Retirement Age; and, are not the speediest mail processors on the best of days. So, this Plaintiff believes the digital mail is bottlenecking at the Unit Mailroom due to limiting disabilities and/or shortages of processing Staff. The digital scanning company MAY be transmitting the scanned mail to the Defendant's computer server within "three days" — but the Defendant is clearly NOT making it available on Plaintiff's tablet in three days.

Part VII (D) — "Have you attempted to make a case for any or all of those letters to be returned before they are destroyed? If so, have you successfully made your case so that any or all of the ( ) letters were returned? Are you aware of any of those letters being destroyed?"
— As stated supra, Plaintiff sent an inquirey letter to the "Management" of the scanning

company's P.O. Box in October 2023; and, have had numerous conversations with McConnell Unit Mailroom Supervisor Salles. No response to date from the Company; and, Ms Salles seems to be as clueless of any specifics about Policy as all others are.

Plaintiff herein, also, composed a Public: "SEPTEMBER 14, 2023, REMONSTRANCE: On The Subject of Texas Prison Inmate Mail By Private Sector Company." (see Appendix hereto) and sent it to (19) Recipients as shown on the Cover Sheet. There has been no response on the REMONSTRANCE to date: however, Defendant did revise the scanned mail policy shortly after the Texas Attorney General's office would have received the Remonstrance (this does NOT, of course, mean the Policy change was due to same).

* Plaintiff is unaware as to whether or not any of his letters has been destroyed (it's doubtful Defendant will provide any "Notice of Destruction" since there is no appeal). The first scanned letter was RECEIVED by the scanning company approximately August 23, 2023, which was (132) days as of January 2, 2024 — well past (90) days — so there is a high probability numerous of Plaintiff's letters have been destroyed.

— VIII —

"Explain why you believe the 'digital mail /scanned mail' policy has violated your FIRST AMENDMENT Rights."

There are more than one way. First, the U.S. Supreme and lower Courts have consistently held a "chilling effect" on freedom of speech "need not be great in order to be actionable;" and, that "the chilling of free speech ... cannot be compensated for by monetary damages." This is because Freedom of Speech and Expression are two of our most valuable Rights, and are utterly vital to The People in being able to share with one another in everything from Love to Commerce, conflict resolutions to advancement of knowledge

page 10 of 16

and Truths so vital to a Civilized, Tolerant Society capable of living together in Peace in a Diverse Culture. This is especially true for Citizens under 25 years of age whose Minds and Emotions are still developing. Plaintiff would refer here to the letter before the Court from "ACE," a 14 year old High School Student who wrote to Plaintiff (PRIOR TO the scanned mail policy taking effect) after Reading an Essay by Plaintiff. Plaintiff has NOT received a single letter from such Students since the policy took effect! Children can be easily intimidated by Authorities; and, are generally extremely reserved about opening up to ANY Adult about their deeper thoughts; these Students, for reasons of their own, often identify with my Essay topics and opened up to me — hence, affording me an opportunity to expand on my Essay's topic in a way to help them cope and face the messed up world with courage to change it for the better. These Students no longer write me, because they have NO way to know WHO (at the Private Sector Company) might read (or share) their words. In Plaintiff's view, this alone is cause to Enjoin the Policy's application to Readers of Plaintiff's written works.

Second; Plaintiff IS an Ordained Minister in the Creationist Naturism Religion, and Associated Minister with the Universal Life Church. As such, he has an indesputable Constitutional and Legal Right to have PRIVILEDGED & CONFIDENTIAL communication with Congregants who seek him out for Spiritual Advice and other concerns involving the C-N'ist Religion in daily life. Defendant's scanned mail policy obliterates every shread of the limited privacy Plaintiff was able to give his Congregants under the physical correspondence rules. That is — Congregates who could send physical mail to Plaintiff's Unit of Assignment knew WHO the miniscule number of Mailroom Staff are, and knew said Staff only quickly scanned text visually for prohibited messages; on the other hand, there's no way to know how many private sector employees will have access to their letters, what the character of those employees are, or what such employees might choose to do with the letter after it's scanned — so it chills their desire to communicate with Plaintiff.

Third, a scanned, digitalized electronic image is NOT the SAME "speech and expression" that was/is sent to the Plaintiff. Color photographs full of the vibrance of Life's colors is printed in ONLY black & white on cheap copy paper that fairs poorly in the penal environment (moreso on the damp, humid Coastal Plains). Digital images of personal letters totally negates the EXPRESSION the writer's physical original letter carries — a subtle hint of the writer's scent where her bodysplash scented hand rested upon the paper, or an occassional fallen eyelash landed in the fold of the envelope to physically connect Plaintiff with someone who actually cares enough to make the time to sit and write a letter in her own script. Digital mail may convey words — BUT DOES NOT convey the same and whole MESSAGE AND EXPRESSION.

Limited CENSORSHIP is, understandably, necessary in the penal institution — but this censorship is utterly unnecessarily placed upon Plaintiff (and others) who have OBEYED Correspondence Rules for their entire Confinement.

### — IX —

"Explain why you believe the 'digital mail/ scanned mail' policy has violated your Due Process Rights?"

Seizure of Plaintiff's physical mail both limits his Freedom of Speech and Expression unjustifiably, and takes his physical property — as such it is PUNITIVE in nature.

Defendant has NOT provided ANY form of Due Process Administrative Hearing, NOR produced a shred of evidence to show Plaintiff in any way violated Prison Mail Rules or even attempted to use, traffick or smuggle contraband of ANY form through the U.S. Mail into the Prison (nor can Defendant do so, because the Plaintiff has NEVER been involved with drugs in any way). Defendant, also, provides NO form of Administrative and/or State Appellate process to challenge the Policy's application to any given article of correspondence.

page 12 of 16

\* Technically, under the "Ecclesiastical Abstention Doctrine", Defendant and/or other Departments and Agencies of the Secular Government should NOT be interfering with Plaintiff's religious communications in matters of his Religion —

When a prisoner's mail is, for whatever reason, withheld, censored, seized or otherwise infringed upon, the prisoner is entitled to procedural Due Process rights on THAT specific article of mail, inclusive of Notification as to why that article is being denied, and an opportunity to appeal to a higher authority. _Procunier v. Martinez_, 416 U.S. 396 (1974); and, while the REVIEW STANDARD was modified and clarified by _Turner v. Safely_, 482 U.S. 78 (1987), _Turner_ did NOT remove the Due Process right declared by the _Procunier_ Court. Defendant has provided NO Due Process.

— X —

"Explain why you believe the 'digital mail/scanned mail' policy has violated your rights under the Ex Post Facto Clause?"

In relevant part, the U.S. Constitution prohibits "(...) any statute [or official policy under the power of Law] which (1) makes more burdensome the punishment for a crime, after its commission (...)." U.S. Consti., Art. 1 § 10 cl. 1; and, severe limitations newly placed upon Prisoners' correspondence, and/or the destruction/seizure of mail, certainly makes the confinement more "burdensome."

Plaintiff was SENTENCED to TDCJ-CID on May 17, 2022, and lawfully required to comply with the TDCJ-CID Rules in existence AT THAT DATE, and/or as of his intake to TDCJ-CID on July 8, 2022. The 'digital mail/scanned mail' policy — which is putatively punitive in its restrictions on correspondence and FIRST AMENDMENT Rights — was effected on September 6, 2023 ... 1 year 3 mos 20 days after Plaintiff was Sentenced, and 1 year 2 months after his arrival at the TDCJ-CID. Plaintiff's Sentence did NOT include digitalized Mail being FORCED upon him; NOR did it include seizure

and destruction of his priceless and treasured personal letters from Free Citizens. His Sentence covered the Correspondence Rules existent AT THE TIME OF SENTENCING — so forcing the digitalized mail and seizure-destruction of his letters upon him imposes a more burdensome punishment retroactively in violation of EX POST FACTO.

- XI -

"Which TDCJ-CID official or officials do you believe should be held responsible for the enactment, implementation, and enforcement of the 'digital mail/scanned mail' policy?"

Their Names are unknown to me: the TDCJ Executive Director; the TDCJ-CID Director; all Members of the Texas Prison Board; the Mail Services Coordinator; and, any other Executive Level TDCJ-CID who was a "Key Player" in the formation and implementation of this utterly unnecessary Policy.

- XII -

"With respect to any TDCJ officials identified by you, what relief do you seek with respect to each official?"

As a Registered Voter, Taxpayer, and Citizen fed up with Government waste of Public Funds — Plaintiff would LIKE to see these officials replaced; and, for there to be greater oversight and Court review of Policies Prison Officials enact with reckless disregard to the Reality and Practical necessities of penal operations. Also as a Registered Voter, Taxpayer, and Citizen, Plaintiff would very much like our Congress and Courts to mandate TDCJ-CID officials, from frontline Staff to Executives, be more fully trained to consider how ALL Policies, Practices and Treatment of Prisoners have a very powerful (and potentially dangerous) consequential effect on FREE SOCIETY upon the Prisoners' release back to Society. THIS has been ignored FAR TOO LONG!

page 14 of 16

As a Prisoner of TDCJ-CID and Human being — "what relief" would Plaintiff seek?

(1) much deserved compensation for actual damages of $1,000.00 for EACH destroyed letter from EACH Official responsible;

(2) Exemplary damages of $5,000.00;

(3) Punitive damages from EACH Responsible Official in the amount of $10,000.00;

(4) Declaratory Relief that the 'digital mail/scanned mail' policy is unconstitutional AS APPLIED TO Plaintiff (and other TDCJ Prisoners) who have NOT, through Due Process, been shown to have violated TDCJ-CID correspondence rules as they existed prior to September 1, 2023; or shown, through Due Process, to have used or trafficked contraband through the mail; and,

(5) to Permanently Enjoin the 'digital mail/scanned mail' Policy's enforcement EXCEPT as consistent with the Declaration in paragraph (4) above.

NOTE: Plaintiff would, also, HOPE the Courts would abandon the "Carceral Diference Doctrine" (defering to prison officials "unique expertise"), and start applying greater objectivity, logic and common sense to issues related to prison operations. Texas' Prison Board is the Chief Policy makers, and The Board is political appointees with little or no actual experience inside the Prison Community. A Court is certainly more competent than a Political Cronie to logically review prison operations! Plaintiff feels it denigrates, and insults the intelligence of, Jurists to suggest otherwise.

page 15 of 16

Wherefore, Plaintiff concludes this, his "More Definite Statement" by the following Oath: I, James Logan Diez, do hereby certify, verify and swear that every word I have written and included herein is true and correct to the fullest extent of my knowledge and beliefs. So I do swear in the Spirit of Peace, service to THE MOST HIGH, and by my Honor of The Blood.
January 2, 2024                                J. Logan Diez

* For greater clarity, Plaintiff includes and incorporates hereto his previously submitted supplemental Briefs.

Respectfully submitted January 2, 2024, by placing same in the Prison Mailbox on 7-Bldg of McConnell Unit.

J. Logan Diez
James Logan Diez   pro se
2399291   McConnell
3001 S. Emily Drive
Beeville, TX   78102

in.re. Service on Defendant

Defendant herein has neither been served Original Complaint, nor compelled to Answer same. While Plaintiff has provided the Texas Attorney General's Office courtesy copies of certain pleadings — there has been no exchange with Defendant per se on this case. Therefore, Defendant has NOT been served a copy of this pleading for the Court's benefit.
J. Logan Diez

page 16 of 16