United States District Court
Southern District of Texas
**ENTERED**
March 25, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAMES LOGAN DIEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00269 |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE -CID, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO RETAIN CASE AND DISMISS CERTAIN CLAIMS

Plaintiff James Logan Diez, appearing *pro se*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 1915A.

For the reasons stated below and for purposes of 28 U.S.C. § 1915A, the undersigned respectfully recommends that the Court:

- **DISMISS without prejudice** Plaintiff's claims against the Texas Department of Criminal Justice ("TDCJ") as barred by the Eleventh Amendment;

- **DISMISS without prejudice** Plaintiff's claims against the McConnell Unit Mailroom Supervisor Ms. Salles, McConnell Unit Unknown Mailroom Staff, Texas Prison Board, the Director of Mail Services Coordinator Panel for TDCJ, and the Executive Director of TDCJ in their official capacities for money damages as barred by the Eleventh Amendment;

- **RETAIN** Plaintiff's First Amendment free speech claim and Fourteenth Amendment due process claim against Texas Department of Criminal Justice Institutional Division (TCDJ-CID) Executive Director in his official capacity for injunctive relief;

- **DISMISS with prejudice** Plaintiff's remaining claims; and

- **DENY** Plaintiff's motion for emergency order to secure banking documents (D.E. 5) and motion to reconsider (D.E. 8).

## I.  JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.  PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate currently housed at the TDCJ-McConnell Unit in Beeville, Texas.  Plaintiff's allegations in this case arise in connection with his current confinement.

Plaintiff names TDCJ as the sole Defendant in his original complaint.  (D.E. 1 p. 3).  Plaintiff challenges a new TDCJ mail policy that requires non-legal mail to be sent to a third-party vendor in Dallas, Texas to be scanned and later uploaded to his prisoner electronic tablet.  (D.E. 1 p.4; D.E. 1-1 pp. 1-17).[1]  Plaintiff states that "special; official;

---

[1] Plaintiff has stated the TDCJ policy in his original complaint.  (D.E. 1).  This policy is central to Plaintiff's claims, and is a matter of public record.  The policy is available on the TDCJ website at: https://www.tdcj.texas.gov/offender_info/digital_mail.html#:~:text=Incoming%20mail%20for%20all%20inmates,for%20the%20inmate%20to%20enjoy. Although the actual TDCJ policy was not made a part of the record, the court can take judicial notice of the policy listed on the TDCJ website. See *Huskey v. Jones*, 860 F. App'x 322, 325 n.3 (5th Cir. 2021) (per curiam) (explaining that the court "may take judicial notice of grievance procedures listed on a state's website.") (citing *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (per curiam)).

and legal mail from Courts, attorneys, and law enforcement is still sent direct to prisoners at their facility; as are certified mail; media mail; books; magazines; packages; and other subscriptions from various publishers." (D.E. 1-1 p. 1). Plaintiff complained that the new policy violates his First Amendment rights, denied him due process, and unlawfully seized his personal property. (D.E. 1 p. 4). Plaintiff also argued that the policy violates the Ex Post Facto Clause. (D.E. 1-1 p. 7).

At the Court's direction, Plaintiff has filed a More Definite Statement. (D.E. 16). Plaintiff alleges the following pertinent facts in his More Definite Statement. He arrived at the McConnell Unit on August 22, 2022. *Id*. at 1. He stated that he was unsure of the full names/identities of officials he believes are responsible for implementing and enforcing the digital/scanning mail policy at TDCJ. *Id*. at 3. He did go on to state that McConnell Unit Mailroom Supervisor Ms. Salles, McConnell Unit Unknown Mailroom Staff, Texas Prison Board, the Director of Mail Services Coordinator Panel for TDCJ, and the Executive Director of TDCJ would be the individuals responsible for the new policy.[2] *Id*. The new mail policy is supposed to be available to the inmate on the tablet three business days after scanning. *Id*. at 4. He stated that, according to the new policy, the scanned mail is stored for ninety days before professional disposal and that the sender could request the physical mail be sent back to him/her with a self-addressed stamped envelope. *Id*. at 5. He is able to view his mail on his tablet with properly functioning Wi-Fi. *Id*. He often receives his scanned mail on his tablet after the three business days,

---

[2] The Court has issued a separate Order adding the listed TDCJ personnel as Defendants in this matter. (D.E. 24).

stating that delay periods have ranged from twenty-seven to ninety days for his receipt of his scanned mail.  *Id*. at 8.  Plaintiff states that prior to this new mail scan policy, he received correspondence from students interested in his written published work.  *Id*. at 11.  Plaintiff would also receive correspondence from religious congregants who would seek his counsel.  *Id*.  Since the new mail scan policy has taken affect, Plaintiff has not received any such correspondence and believes it is due to the chilling effect the policy has had on the people he received mail from on previous occasions.  *Id*. at 11-12. Plaintiff alleges he filed a Step 1 grievance, which was denied.  (D.E. 20 pp. 4-6). Plaintiff also states repeatedly that he disputes that the new mail scan policy has any penological interest and is a waste of taxpayer dollars.  (D.E.s 16 & 20).

Per TDCJ's inmate information website, the policy itself states:

> "The Texas Department of Criminal Justice (TDCJ) is excited to announce that we are moving to a digital mail platform to reduce the amount of dangerous contraband in our facilities.
>
> Effective **September 6, 2023**, all units will be moved to the digital mail platform.
>
> Incoming mail for all inmates should be sent to the digital mail processing center where it will be sorted, scanned, and uploaded to the inmate's secure tablet. These messages and photos will be scanned in color and can be saved to the tablet to be permanently available for the inmate to enjoy. Exceptions to this include legal mail; media mail; and books, magazines, packages, and other subscriptions from verified or publishers, which should be sent to the unit.

| Type of Document | Where to Send |
|---|---|
| Personal mail from family, friends, and businesses | Digital Mail Processing Center |
| Greeting cards | Digital Mail Processing Center |
| Photos | Digital Mail Processing Center |
| Documents that require inmate signature | Unit Law Library |
| Surveys to be completed by inmates | Contact Research & Development Department |
| Legal mail | Unit |
| Special mail | Unit |
| Media correspondence | Unit |
| Business correspondence from organizations, businesses, and agencies | Unit |

To send mail to the Digital Processing Center, please address it to:

> Texas Department of Criminal Justice
> *Inmate's Full First and Last Name + TDCJ Number*
> PO Box 660400
> Dallas, TX 75266-0400

Inmates who do not have a tablet will receive black and white printed copies of their correspondence.

While no single effort can completely stop the transmission of dangerous contraband, we feel that every measure we can take to improve health and safety in our facilities is worth adopting.

You may have questions about the TDCJ's new digital mail platform, so we've created a list of frequently asked questions to provide further details.

The process for outbound mail has not changed."[3]

---

[3] *See* TDCJ Digital Mail Policy available on the TDCJ website at: http://www.texas.gov/offender_info/digital_mail.html.

Liberally construed, Plaintiff believes the new mail policy has violated his First, Fourth, and Fourteenth Amendment rights, and his rights under the *Ex Post Facto* Clause. (D.E. 16 pp. 10-14).  Plaintiff seeks injunctive relief, reimbursement of his court costs, punitive damages of $10,000 per official responsible, $1,000 damages for each letter destroyed from each official responsible, and a declaratory judgment.  (D.E. 16 pp.14-15).

## III.    GOVERNING LAW

### A.  Legal Standard for Screening of Plaintiff's Action

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A (b) (providing that a court shall review a complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).  A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

**B. Relevant law regarding 42 U.S.C. § 1983**

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim,

the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). "A policy is normally an official statement, ordinance, or regulation, but in certain circumstances a persistent, widespread practice that is so commonplace as to constitute a custom can also be treated as policy." *McNeil v. Caruso*, No. 17-01688, 2019 WL 1435831, at *2 (M.D. La. Mar. 28, 2019) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

## IV. Discussion

### A. Individual Capacity

Plaintiff's allegations against the TDCJ officials in their individual capacities are construed as a claimed denial of his First and Fourteenth Amendment right to access the courts. Prisoners have a "fundamental constitutional right of access to the courts" under

the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996).

Meaningful access to the courts is the touchstone, as there is no "abstract, freestanding

right to a law library or legal assistance." *Id.* at 351.

To prove a denial of meaningful access to the courts, a plaintiff must demonstrate

some actual injury, such as the loss or rejection of a nonfrivolous legal claim. *See*

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *DeMarco v. Davis*, 914 F.3d 383, 387

(5th Cir. 2019). A pretrial detainee's right to access the courts is satisfied by the provision

of counsel. *See Dickinson v. TX, Fort Bend Cnty.*, 325 F. App'x 389, 390 (5th Cir. 2009).

"'[T]he fundamental constitutional right of access to the courts requires prison authorities

to assist inmates in the preparation and filing of meaningful legal papers by providing

prisoners with adequate law libraries or adequate assistance from persons trained in the

law.'" *See Degrate v. Godwin*, 84 F.3d 768, 768-69 (5th Cir. 1996) (quoting *Bounds v.*

*Smith*, 430 U.S. 817, 828 (1977) (emphasis added)).

Furthermore, an inmate's right to access the courts "encompasses only 'a

reasonable opportunity to file nonfrivolous legal claims challenging their convictions or

conditions of confinement.'" *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)

(quoting *Lewis*, 518 U.S. at 350). Plaintiff alleges no facts to show that his ability to

pursue any nonfrivolous claims challenging either his current confinement or conditions

of confinement has been hindered through any action taken by TDCJ officials. The

presence of this action belies any claim that Plaintiff has been denied meaningful access

to the courts with regard to filing a § 1983 prisoner civil rights action. Plaintiff's

allegations, accepted as true, fail to plausibly allege any cognizable injury or any hardship of a constitutional magnitude. See *Slayton v. Cheadle*, No. H-22-4411, 2023 WL 424832, at *5 (S.D. Tex. Jan. 26, 2023) (Hittner, J).

Accordingly, the undersigned recommends that Plaintiff's claims against McConnell Unit Mailroom Supervisor Ms. Salles, McConnell Unit Unknown Mailroom Staff, Texas Prison Board, the Director of Mail Services Coordinator Panel for TDCJ, and the Executive Director of TDCJ in their individual capacities be dismissed with prejudice as frivolous or for failure to state a claim upon which relief can be granted.

### B.  Eleventh Amendment

Plaintiff has named the TDCJ as one of the defendants in this case.  The Eleventh Amendment bars suit against state entities such as the TDCJ regardless of whether money damages or injunctive relief is sought under § 1983.  *See Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998); *Clay v. Texas Women's University*, 728 F.2d 714, 715-16 (5th Cir. 1984). Accordingly, it is respectfully recommended that Plaintiff's § 1983 claims against the TDCJ be dismissed without prejudice as barred by the Eleventh Amendment. [4]

The undersigned next considers whether Plaintiff's claims for damages, against the TDCJ personnel Defendants in their official capacities alternatively are barred by

---

[4] Claims implicating the Eleventh Amendment are dismissed without prejudice because the Eleventh Amendment deprives the Court of subject matter jurisdiction. *See Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 450 (5th Cir. 2022) (observing that "the Eleventh Amendment generally deprives federal courts of jurisdiction" over certain suits); *United States v. Texas Tech Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999) ("While the Supreme Court has left this question open, [the Fifth Circuit] has repeatedly referred to the Eleventh Amendment's restriction in terms of subject matter jurisdiction.").

sovereign immunity.  "The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity."  *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).

A claim against a TDCJ official in his or her official capacity is a claim against TDCJ, and thus a claim against the State of Texas.  *See Mayfield v. Tex. Dep't of Tex. Crim. Just.*, 529 F.3d 599, 604 (5th Cir. 2008).  Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Martinez v. Tex. Dep't. of Crim. Just.*, 300 F.3d 567, 575 (2002).  Texas has not waived its Eleventh Amendment immunity and Congress did not abrogate that immunity when enacting § 1983.  *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015).  The Eleventh Amendment also bars a federal action for money damages against state officials in their official capacities when the state itself is the real party in interest.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984); *Oliver*, 276 F.3d at 742 ("[T]he Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity.) (citation omitted).

To the extent that Plaintiff sues the TDCJ personnel Defendants (McConnell Unit Mailroom Supervisor Ms. Salles, McConnell Unit Unknown Mailroom Staff, Texas Prison Board, the Director of Mail Services Coordinator Panel for TDCJ, and the Executive

Director of TDCJ) in their official capacities for money damages, such claims are barred by the Eleventh Amendment and subject to dismissal without prejudice.

### C.  First Amendment – Inspection of Non-Legal Mail

Inmates enjoy a First Amendment right to send and receive mail. See *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). However, a prison or jail may adopt regulations or practices that impinge on a prisoner's First Amendment rights, including rights regarding mail, if those regulations are "'reasonably related to legitimate penological interests.'" *Id*. at 404 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  Because "freedom from censorship is not equivalent to freedom from inspection or perusal," prison officials have the right to open and to inspect a prisoner's incoming and outgoing mail—even legal mail from attorneys or from inmates to attorneys. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974). While a prisoner's legal mail enjoys more protection, courts have upheld the ability of prisons to inspect and even copy a prisoner's nonlegal mail. See, e.g., *Smith v. Long*, No. 3:19-cv-00061, 2018 WL 3831394, at *7 (M.D. Tenn. Aug. 13, 2018) (finding that jail officials did not violate the plaintiff's constitutional rights by opening and inspecting his non-privileged incoming mail and noting that "it is well established that prison officials do not commit a constitutional violation by opening, inspecting, and even copying prisoners' non-privileged outgoing mail") (collecting cases); *Thongvanh v. Thalcker*, 17 F.3d 256, 258-59 (8th Cir. 1994) (noting that prison officials have a duty to maintain security in the prison and this may include reading inmates' incoming and outgoing mail, with the exception of legal mail); *Stockdale v. Dwyer*, NO. 06-cv-25 CAS,

2007 WL 2994316, at *8 (E.D. Mo. Oct. 11, 2007) ("The constitutional protection for legal mail only extends to genuine legal mail, as an inmate has no constitutional right to prevent prison officials from opening or inspecting nonlegal mail.").

Plaintiff does not allege any claim regarding his legal mail or the policies in place inside TDCJ regarding legal mail.  Instead, Plaintiff only claims constitutional violations with regard to his non-legal mail.  Prisons routinely open and scan inmates' incoming mail for security purposes and the practice has repeatedly passed constitutional muster. *Walker v. Navarro Cnty. Jail*, 4 F.3d 410 (5th Cir. 1993) (jail has legitimate interest in opening and inspecting incoming mail for contraband); *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) (inspection of nonprivileged mail does not violate a prisoner's rights); *Martin v. Tyson*, 845 F.2d 1451 (7th Cir. 1988) (inspection of inmate's personal mail for contraband served a legitimate purpose); *Oliver v. Powell*, 250 F. Supp. 2d 593 (E.D. Va. 2002) (prison policy of opening and reading incoming general correspondence was justified by legitimate penological interests).

Based on the considerable caselaw cited above, Plaintiff has failed to state a First Amendment claim to the extent he seeks to challenge TDCJ's actions in effectively opening and inspecting his non-legal mail thorough having his mail placed in a digital format.  Accordingly, the undersigned recommends that Plaintiff's First Amendment inspection claim against the TDCJ personnel Defendants (McConnell Unit Mailroom Supervisor Ms. Salles, McConnell Unit Unknown Mailroom Staff, Texas Prison Board, the Director of Mail Services Coordinator Panel for TDCJ, and the Executive Director of

TDCJ) in their official capacities are subject to dismissal for failure to state a claim for relief.

### D.     First Amendment – Free Speech

Liberally construed, Plaintiff argues that his First Amendment right to free speech has been violated by the new TDCJ mail scan policy as unjustly interfering with communication.  The First Amendment provides that Congress shall make no law…abridging the freedom of speech.  U.S. Const., amend I.  The First Amendment has been made applicable to the States through the Fourteenth Amendment.  U.S. Const., amend XIV.  A prisoner retains those First Amendment rights that are not inconsistent with his or her status as a prisoner or with the legitimate penological interests of the correction system.  *Pell v. Procunier*, 416 U.S. 817, 822 (1974).  An abridgement of the rights of free speech occurs when the government engages in unjustified interference with communications.  *See Brewer v. Wilkinson*, 3 F. 3d 816, 820 (5th Cir. 1993).  Inmates retain a First Amendment right to be free from mail censorship not "'reasonably related to legitimate penological interests.'"  *Schwarzer v. Wainwright*, No. 19-14011, 2021 WL 6060002, at *1 (5th Cir. Dec. 17, 2021)(quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989).

The opening and inspecting of non-legal mail does not violate the Constitution.  *Wolff v. McDonnell*, 418 U.S. 539, 575-76 (1974)("Freedom from censorship [of mail] is not equivalent to freedom from inspection and perusal."); see also, e.g.,

While there is no precedent that it violates the First Amendment for a prison to use vendors to scan non-privileged mail, send the digital files to the prisons, and destroy the originals, *Rancourt Little Mountain Woodell v. Wetzel*, 2022 WL 17424287, at *2 (3rd. Cir. Dec. 6, 2022), Plaintiff has alleged sufficient facts giving rise to a plausible First Amendment claim through the new policy's alleged unjust interference with and chilling effect on his ability to communicate with individuals interested in his writings. *Cf. Dickerson v. Chatman*, 2008 WL 41155624, at *3(M.D. Ga. Sept. 5, 2008) ("In light of the fact that a prison has a legitimate security interest in opening and inspecting incoming mail for contraband, plaintiff's allegation that his incoming mail was opened and read *but not censored* does not rise to the level of a constitutional violation." (emphasis added)) (citing *Thornburgh*, 490 at413-14 and *Turner*, 482 U.S. at 91-92).

When analyzing whether a prison policy violates the First Amendment, the Court also must consider whether the regulation is rationally related to a legitimate penological goal. *Prison Legal News v. Livingston*, 683 F. 3d 201, 214 (5th  Cir. 2012).  TDCJ's new policy does state without supporting detail that TDCJ would be moving non-legal mail to a digital platform "to reduce the amount of dangerous contraband in our facilities" and to "stop of transmission of dangerous contraband."  *See* TDCJ Digital Mail Policy available on the TDCJ website at: http://www.texas.gov/offender_info/digital_mail.html. However, Plaintiff disputes whether the stated reasons by TDCJ in fact relate to a legitimate penological interest.  The undersigned believes that conducting the analysis of whether the new policy relates to a legitimate penological interest at the screening stage is

premature. *See Shafer v. Lumpkin*, No. 2:23-CV-53, 2024 WL 416378, at *4 (S.D. Tex. Feb. 5, 2024) (Libby, Mag. J.), *recommendation adopted* 2024 WL 416378 (S.D. Tex. Feb. 5, 2024) (Morales, J.) (citing *Lopez v. Lumpkin*, No. 4:20-CV-3307, 2022 WL 1839950 (S.D. Tex. Nov. 22, 2022) and Smith v. Lumpkin, No. W-20-CA-263-ADA, 2020 WL 7426710 (W.D. Tex. Dec. 18, 2020)).  Accordingly, the undersigned finds that Plaintiff has stated a First Amendment free speech claim on the issue of whether the new digital mail policy unjust interferes with Plaintiff's ability to communicate.

The undersigned next turns to consider who the appropriate defendant would be regarding his First Amendment free speech claim.  Other than listing numerous officials, Plaintiff has not provided the Court with specific facts targeting which TDCJ officials actually were responsible for implementing and enforcing the new digital mail policy. The undersigned nevertheless finds that  the TDCJ-CID Executive Director is the  official capable of ensuring compliance with any future order requiring injunctive relief in the event Plaintiff prevails.  Therefore, the undersigned recommends that the Court retain Plaintiff's First Amendment free speech claim challenging the new digital mail policy against TDCJ-CID Executive Director in his official capacity for injunctive relief.  The undersigned recommends dismissal of Plaintiff's First Amendment claims against all other Defendants.[5]

---

[5] Should facts come to light as this case proceeds as to other TDCJ officials capable of providing Plaintiff with relief with respect to the new digital mail policy, Plaintiff may seek to amend his complaint at that time.

### E.    Fourth Amendment

Next, Plaintiff submits that his mail constitutes his personal property, and it has been unlawfully seized by TDCJ in the process of scanning his mail.  The Court construes this as an argument by Plaintiff that his Fourth Amendment rights have been violated.  Plaintiff's claim is without merit.  As an incarcerated individual, he has no reasonable expectation of privacy to trigger Fourth Amendment protections here. *Robinson v. Pennsylvania Dep't of Corr.*, 851 F. App'x 289, 293 (3rd Cir. 2021); *see also Hudson v. Palmer*, 468 U.S. 517, 526, 529-30 (1984) (holding that a prisoner has no reasonable expectation of privacy in his cell, which would include his personal effects); *Witherow v. Crawford*, 468 F. Supp. 2d 1253 (D. Nev. 2007), *adhered to*, 2007 WL 2509030 (D. Nev. 2007),  *aff'd*, 2009 WL 2387251 (9th  Cir. 2009) (no valid Fourth Amendment claim since plaintiffs had no reasonable expectation of privacy in their mail). State inmate had no reasonable expectation of privacy, and thus state corrections department's mail policy—pursuant to which contractor scanned and converted incoming non-privileged inmate mail into digital documents, which were e-mailed to the prison, where they were printed and given to inmates—did not violate inmate's Fourth Amendment rights. *Robinson*, 851 F. App'x at 293.  Therefore, the mail policy does not amount to a Fourth Amendment violation.

### F.    Fourteenth Amendment

Plaintiff also argues that he has been denied due process under the Fourteenth Amendment.  The Fourteenth Amendment protects inmates from being deprived of

liberty or property without due process of law. *Wolff*, 418 U.S. at 556. The constitutional

guarantee of procedural due process includes, at a minimum, notice and an opportunity to

be heard in a meaningful time and manner. *Gibson v Tex. Dept. of Ins.-Div. of Worker's*

*Compensation*, 800 F.3d 227, 239 (5th Cir. 2012)(quoting *Fuentes v. Shevin*, 407 U.S. 67,

80 (1972)). The Fifth Circuit has explained:

> Inmates are entitled to procedural due process protections in connection with the
> denial of mail, including notice and an opportunity to be heard. *See Procunier v.*
> *Martinez*, 416 U.S. 396, 417-19 (1974), *overruled on other grounds*, *Prisoner*
> *Legal News*, 683 F. 3d at 222. Traditional procedural process arguably requires a
> right to object and a "right to participate in DRC's consideration of the appeal,
> even informally or through written submissions." *Prison Legal News*, 683 F. 3d at
> 224 (dictum); *see United States v Gonzalez*, 250 F.3d 923, 926 (5th Cir.
> 2001)(noting that dicta are nonbinding but may be persuasive).

*Schwarzer*, 2021 WL 6060002, at *1.

Based on Plaintiff's allegations of being denied an opportunity to challenge the

new mail scan policy of TDCJ, Plaintiff has stated a viable claim under the Fourteenth

Amendment.

Regarding Plaintiff's procedural due process claim for injunctive relief, the TDCJ-

CID Executive Director is an official who is capable of ensuring compliance with an

order requiring injunctive relief. Therefore, the undersigned recommends the Court

retain Plaintiff's procedural due process claim against Defendant TDCJ-CID Executive

Director in his official capacity for injunctive relief.

### G.      Ex Post Facto Clause

Finally, Plaintiff reasons that the mail scan policy violates the *Ex Post Facto* clause of the U.S. Constitution.  Article I, § 10, of the United States Constitution prohibits a State from passing any "*ex post facto* Law." To constitute a violation of the *Ex Post Facto* Clause, a change in law "must be both retroactive and to a prisoner's detriment." See *Hallmark v. Johnson*, 118 F.3d 1073, 1077–78 (5th Cir.1997); see also *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63(1997) ("To fall within the *ex post facto* prohibition, a law must be retrospective-that is, 'it must apply to events occurring before its enactment'-and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime."). The *Ex Post Facto* Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30 (1981).

In order to make an *ex post facto* claim, Plaintiff must show "that the law he challenges operates retroactively ... and that it raises the penalty from whatever the law provided when he acted." *Johnson v. United States*, 529 U.S. 694, 699 (2000); see also *Burnette v. Fahey*, 687 F.3d 171, 184 (4th Cir.2012) ("To state a claim for a violation of this provision, a plaintiff must plead facts showing the retroactive application of a new rule that 'by its own terms' or through 'practical implementation' creates a 'significant risk' of extending the period of incarceration to which he is subject." (quoting *Garner v. Jones*, 529 U.S. 244, 255 (2000)).  Prison regulations may be subject to "reasonable

amendments as necessary for good prison administration, safety[,] and efficiency, without implicating *ex post facto* concerns." *Ewell v. Murray*, 11 F.3d 482, 485–86 (4th Cir.1993). Regarding the *Ex Post Facto* Clause, Plaintiff argues that his "sentence did not include digital read mail being forced upon him." (D.E. 16 p. 13).

Here, Plaintiff has not claimed that prison officials have unlawfully extended his sentence. Further, he does not claim that the TDCJ policy at issue here is retrospective. Plaintiff has not stated a claim pursuant to the *Ex Post Facto* Clause.

### H.    Plaintiff's Motion for Order Regarding his Banking Documents

Closely related to the overall subject of this litigation, Plaintiff filed a "motion for emergency order to secure Plaintiff's banking information" and a "motion for reconsideration." (D.E.s 5 & 8). In these motions, Plaintiff argues that he has a privacy interest in his bank documents that were mailed to him at the TDCJ McConnell Unit in Beeville, Texas. Plaintiff argues that prison officials have violated his privacy rights by opening his banking documents and sending them to a private contractor for electronic scanning. Plaintiff argues that the Right to Financial Privacy Act, codified at Title 12 U.S.C. § 3402, creates a privacy interest in personal banking documents. Plaintiff further argues that *United States v. Miller*, 425 U.S. 435 (1976) was "rendered moot" when Congress enacted the Right to Financial Privacy Act. Plaintiff's arguments fail for the reasons set out below.

The Court construes Plaintiff's motions as seeking injunctive relief arguing that his Fourth Amendment rights to privacy under the United States Constitution have been

violated by the prison policies in place specifically regarding his banking documents.  He seeks injunctive relief in the form of a Court order directing TDCJ to: (1) retrieve his banking statements from the company receiving them for scanning; (2) insure that all copies of Plaintiff's bank statements be destroyed with all originals delivered to him; and (3) scrub all electronic copies of the bank statements from the company's server.  (D.E. 5, p. 3).

A movant is entitled to a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) if he establishes the following four elements: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Robinson v. Hunt Cnty., Texas*, 921 F.3d 440, 451 (5th Cir. 2019) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006)).  The Fifth Circuit has cautioned that granting a preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)); *see also Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("The decision to grant a preliminary injunction is to be treated as the exception rather than the rule.").

Plaintiff's general Fourth Amendment claim fails for the reasons outlined above.

Specifically regarding banking documents, the United States Supreme Court has held that a bank depositor has no protectible Fourth Amendment interest in bank records. *Miller*, 425 U.S. 435 (1976). Also, the Right to Financial Privacy Act ("The Act") did not create a Fourth Amendment right to privacy in personal banking documents. The Act provides, in pertinent part: [N]o Government authority may have access to or obtain copies of, or [sic] the information contained in the financial records of any customer from a financial institution unless ... such customer has authorized such disclosure ... [or] such financial records are disclosed in response to a judicial subpena [sic] which meets the requirements of ... this title.... 12 U.S.C. § 3402. The Act addresses unjustified intrusions into an individual's records by law enforcement while at the same time permitting legitimate law enforcement activity. It does not address or create any privacy interest in prisoner mail. The Act, likewise, does not make financial documents privileged documents subject to any level of mail screen similar to legal mail for prisoners.

Plaintiff also argues that *United States v. Miller* was rendered moot by the Act. 425 U.S. 435 (1976). It was not. Congress enacted the Act in 1978, following the Supreme Court's ruling in *United States v. Miller* that a bank customer has no protectable Fourth Amendment rights in the financial records of the bank that pertain to her. See *Miller*, 425 U.S. at 440–44. The Act "fill[s] the gap left by the ruling in *Miller*[,]" *SEC v. Jerry T. O'Brien, Inc*., 467 U.S. 735 (1984), insofar as it "accords customers of banks and similar financial institutions certain rights to be notified of and to challenge in court administrative subpoenas of financial records in the possession of the banks." *Id*. at 745.

In its core provision pertaining to administrative subpoenas, the Act provides that a

federal government entity may subpoena a bank to obtain financial records about a bank's

customer only if "there is reason to believe that the records sought are relevant to a

legitimate law enforcement inquiry[.]" 12 U.S.C. § 3405(1); see also *id*. § 3401(8)

(defining "law enforcement inquiry" as "a lawful investigation or official proceeding

inquiring into a violation of, or failure to comply with, any criminal or civil statute or any

regulation, rule, or order issued pursuant thereto").

Plaintiff also cites three Texas Government Code sections:

> Section 552.229 states (a) Consent for the release of information excepted from disclosure to the general public but available to a specific person under Sections 552.023 and 552.307 must be in writing and signed by the specific person or the person's authorized representative.

> Section 552.101 states information is excepted from the requirements of Section 552.021 if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision.

> Section 552.023(d) states a person who receives information under this section may disclose the information to others only to the extent consistent with the authorized purposes for which consent to release the information was obtained.

Again, none of these statutes create a privacy interest in incoming non-legal prison

mail. More specifically, none of these statutes create any privacy right or confidentiality

requirement regarding banking records mailed to a prisoner at his request. Section

552.101 of the Government Code excepts from disclosure under that act information that

is "considered to be confidential by law, either constitutional, statutory, or by judicial

decision." Tex.Govt.Code Ann. § 552.101 (Vernon 1994). In *Apodaca v. Montes*, 606

S.W.2d 734 (Tex.Civ.App.—El Paso 1980, no writ), a bondsman's financial statement was held not to be included within that exception. Id. at 735–36. This holding was necessarily based on the court's determination that there was no constitutional right of privacy in an individual's financial records. *Martin v. Darnell*, 960 S.W. 2d 838, 844- 845 (Tex. App. 1997).

Regarding Plaintiff's claim for injunctive relief regarding his banking documents, there is no substantial success on the likelihood of his underlying claims as well as the particular Fourth Amendment claims set forth in the motion.  He further has not set forth anything indicating that there is a substantial risk of irreparable harm.  His claims are speculative. Therefore, the motions (D.E.s 5 & 8) regarding securing Plaintiff's banking documents should be denied.

## V.  RECOMMENDATION

For the reasons stated above and for purposes of §§ 1915A, the undersigned respectfully recommends that the Court:

- **DISMISS without prejudice** Plaintiff's claims against the Texas Department of Criminal Justice ("TDCJ") as barred by the Eleventh Amendment;

- **DISMISS without prejudice** Plaintiff's claims against the McConnell Unit Mailroom Supervisor Ms. Salles, McConnell Unit Unknown Mailroom Staff, Texas Prison Board, the Director of Mail Services Coordinator Panel for TDCJ, and the Executive Director of TDCJ in their official capacities for money damages as barred by the Eleventh Amendment;

- **RETAIN** Plaintiff's First Amendment free speech claim and Fourteenth Amendment procedural due process claim against Texas Department of Criminal Justice Institutional Division (TCDJ-CID) Executive Director in his official capacity for injunctive relief;

- **DISMISS with prejudice** Plaintiff's remaining claims as frivolous and/or for failure to state a claim for relief; and

- **DENY** Plaintiff's motion for emergency order to secure banking documents (D.E. 5) and motion to reconsider (D.E. 8).

Respectfully submitted on March 25, 2024.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).