**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **JAMES LOGAN DIEZ #02399291,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 2:23-CV-00269** |
| | § | |
| **TEXAS DEPARTMENT OF CRIMINAL** | § | |
| **JUSTICE – CID, et al.** | § | |
| *Defendants.* | § | |

---

**DEFENDANT BRYAN COLLIER'S MOTION FOR JUDGEMENT ON THE
PLEADINGS PURSUANT
TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 12(c)**

---

Defendant Bryan Collier ("Defendant"), by and through the Office of the Attorney General of Texas, file this motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) for failure to state a claim and failure to exhaust administrative remedies. In support, Defendants offer the following:

## I.        STATEMENT OF THE CASE

Plaintiff James Logan Diez ("Plaintiff"), proceeding *pro se*, is an inmate confined to the custody of the Texas Department of Criminal Justice ("TDCJ") at McConnel Unit in Beeville, Texas.  D.E. 1.  On October 19, 2023, Plaintiff brought suit pursuant to 42 U.S.C. § 1983 alleging violations of his First and Fourteenth Amendment rights. Plaintiff filed his Original Complaint (D.E. 1), followed by a supporting brief (D.E. 15), More Definite Statement (D.E. 16), and "Evidentiary Support to Plaintiff's More Definite Statement" (D.E. 20).  Magistrate Judge Julie K. Hampton filed a Memorandum and Recommendation (D.E. 29), to which Plaintiff filed an Objection (D.E. 31). Taking into consideration all of the above, District Judge Neva Gonzales Ramos filed an Order Adoping in Part and Rejecting in Part (D.E. 35).

Addressing only the remaining claims, Plaintiff challenges a new TDCJ mailing policy which requires non-legal mail to be sent to a third-party vendor in Dallas, Texas to be scanned and later uploaded to prisoners' electronic tablets. (D.E. 1 at 4; D.E. 1-1 at 17).  Plaintiff asserts this policy violates his First Amendment rights due to a delay in receiving mail, and due to a chilling effect on his speech and the speech of those who would communicate with him, and  that a lack of opportunity to be heard about his disgreement with such policy violates his Fourteenth Amendment rights to procedural due process.  D.E. 16 at 14-15.  Included in the First Amendment claim, is the issue of whether the hypothetical risk of a data leak –  resulting from digitized mail being stored on an internet server – constitutes a First Amendment violation relative to chilling speech.  D.E. 35 at 4-5.  Plaintiff originally sought injunctive relief, reimbursement of his court costs, and punitive damages; however, District Judge Ramos determined the First and Fourteenth Amendment claims would be retained against Defendant in his official capacity for injunctive relief, only.  D.E. 35 at 6.

The injunctive relief Plaintiff sought throughout his complaint, and More Definite Statement include: (1) preliminary injunction temporarily restraining Defendant from blanket application of mail scanning policy to the Plaintiff, (2) declaratory relief that the digital mail scan policy is overbroad, excessive and violates First and Fourteenth Amendments, (3) declaratory relief that the policy unduly inhibits and restricts Plaintiff's association and communication rights with readers of his essays/articles, (*See* D.E. 1 at 17), (4) to "see officials replaced", (5) "greater oversight and court review of policies of prison officials enacted with reckless disregard to the practical necessities of penal operations," (6) for congress and the courts to mandate TDCJ officials (from the frontline staff to executive officials) "to be more fully trained to consider how policies, practices and treatment of prisoners have a very powerful and potentially dangerous consequential effect on free society upon the prisoners release back to society," and (7) "declaratory relief that the digital mail scanning policy is unconstitutional as applied to Plaintiff and other TDCJ prisoners, who have not,

been shown through due process to have violated TDCJ correspondence rules as they existed prior to Sep. 6, 2023 or been show through due process to have used or trafficked contraband through the mail and to permanently enjoin the digital mail policy's enforcement." *See* D.E. 16 at 14-16.

## II.    <u>STANDARD OF REVIEW</u>

### A.  Judgement on the Pleadings under FRCP 12(c)

Rule 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 n. 8 (5th Cir.2002) ("A number of courts have held that the standard to be applied in a Rule 12(c) motion is identical to that used in a Rule 12(b)(6) motion." (citation and internal quotation marks omitted)).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is proper when a complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The court views all well-pleaded facts in the light most favorable to the plaintiff, *City of Clinton v. Pilgrim's Pride Corp.,* 632 F.3d 148, 152-53 (5th Cir. 2010), "but the court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

Dismissal pursuant to a Rule 12(b)(6) motion is appropriate where the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face" and, as a result, does not "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the pleading standard. . .demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard does not require a probability that a defendant has acted unlawfully, but it asks for "more than a sheer probability." *Id.*

On a Rule 12(b)(6) motion, the court may consider the complaint, its attachments, and documents central to the plaintiff's claims and referenced by the complaint, *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000), as well as any matters on which the court may take judicial notice. *See Lovelace v. Software Spectrum Inc.,* 78 F. 3d 1015, 1017-18 (5th Cir. 1996); *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.,* 336 F.3d 375, 379 (5th Cir. 2003); see also, *Clemmer v. Irving Indep. Sch. Dist.,* No. 3:13-CV-4997-D, 2015 WL 1757358, at *1 (N.D. Tex. Apr. 17, 2015).

### III.    ARGUMENTS AND AUTHORITIES

**A.    Plaintiff's claims against Defendant Collier in his Official Capacity should be dismissed for failure to exhaust administrative remedies as required by the PLRA.**

EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER THE PLRA. 42 U.S.C. § 1997e requires that a prisoner seeking to file a § 1983 action against prison officials must first exhaust all administrative remedies as are available:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense on which defendants bear the burden of showing that administrative remedies were not exhausted. *Abbott v. Babin*, 587 F. App'x 116, 118 (5th Cir. 2014) (citing *Jones v. Bock,* 549 U.S. 199, 216 (2007)).

Unexhausted claims cannot be filed in federal court. *Jones,* 549 U.S. at 202. A prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001). A prisoner must also comply with all

administrative remedies and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. The Fifth Circuit has expressly stated that "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). **If a claim is not properly exhausted, it must be dismissed**. *Id.* The mandatory exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002), *Id.* at 532.

In Texas, a prisoner must complete the state's two-step grievance process before filing suit under § 1983. *Favela v. Collier*, 91 F.4th 1210, 1212 (5th Cir. 2024) (citing 42 U.S.C. § 1997e(a); *Johnson v. Johnson*, 385 F.3d 503, 515–16 (5th Cir. 2004)). Specifically, TDCJ provides a two-step procedure for processing administrative grievances and provides inmates with detailed instructions on how to file their grievances. *Favela*, 91 F.4th at 1212-1213; *Johnson,* 385 F.3d at 515–16; *see* TEX. DEP'T OF CRIM. JUST. *OFFENDER ORIENTATION HANDBOOK*, 73-75 (2017):[1], [2]

[https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf](https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf).

The Fifth Circuit takes "a strict approach" to the exhaustion requirement. *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (quoting *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)). **"[M]ere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion**.

---

[1] In *Ali v. Stephens*, the Fifth Circuit noted that TDCJ's Offender Orientation Handbook "is available online," that the Fifth Circuit had "previously taken judicial notice of the Handbook, and [the Court did] so [again] here." *Ali v. Stephens*, 822 F.3d 776, 782 n.5 (5th Cir. 2016) (citing *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015)). Moreover, the Fifth Circuit in *Favela v. Collier* referenced the same Handbook to which Defendants now direct the Court's attention herein. *Favela,* 91 F.4th at 1212

[2] Pursuant to TDCJ's grievance policy, first, the prisoner must submit a Step 1 grievance within 15 days of the relevant incident to initiate the grievance process. *Favela*, 91 F.4th at 1212. If the prisoner is dissatisfied with the outcome of the Step 1 response by prison officials, he has 15 days from receipt of the Step 1 response to file a Step 2 appeal. *Id.* Both steps of TDCJ's inmate grievance procedure must be completed for a grievance to be considered exhausted. *Id.*; *Johnson*, 385 F.3d at 515 (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir.2001)). Per the TDCJ *Offender Orientation Handbook*, p. 74, only one issue may be presented per grievance and, whereas Step 1 grievances are used to present an issue for the first time, Step 2 *appeals* are used to *appeal* a Step 1 decision.

(emphasis added)" *Id.* (quoting *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010)). An inmate's grievance must be sufficiently specific to give "officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id.* (quoting *Johnson*, 385 F.3d at 517).

Exhaustion is an affirmative defense under the PLRA and inmates are not required to plead or demonstrate exhaustion in their complaints. *Jones*, 549 U.S. at 216. **Nevertheless, a court may appropriately dismiss a complaint at the Rule 12(b)(6) stage for failure to exhaust if "the complaint itself makes clear that the prisoner failed to exhaust."** *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (citing *Jones*, 549 U.S. at 214-215 (holding that courts can dismiss under Rule 12(b)(6) when the existence of an affirmative defense is apparent from the face of the complaint)).

On the face of the Complaint, Plaintiff has failed to exhaust as to both his First Amendment and Fourteenth Amendment procedural due process claims. First, Plaintiff acknowledged in his original compliant that he did not exhaust the grievance procedure because he believed "the issue's not grievable." D.E. 1 at 4. Plaintiff attached his Step 1 grievance (bearing Grievance # 2024045270) as an exhibit in support of his complaint (See D.E. 20 at 4-6) and the Court may consider these grievances as properly part of the Complaint. *See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004) (citing FED. R. CIV. P. 10(c) (holding that exhibits attached to a complaint are part of the complaint "for all purposes," therefore, "it is not error to consider the exhibits to be part of the complaint for purposes of a Rule 12(b)(6) motion.")). There is no dispute that Grievance # 2024045270 was submitted for one, singular purpose: to address the delays in receiving the digitally scanned mail on his respective tablet, requesting relief in the form of demanding TDCJ "go back to U.S.P.S mail or deliver scanned mail within (10) days of postmark consistently." D.E 20 at 4-6.

A cursory review of this singular grievance reveals Plaintiff failed to exhaust his administrative remedies in a few ways. First, he never attempted to informally resolve this issue with

a staff member prior to submitting his Step 1 grievance, as required by the TDCJ's grievance procedure. D.E. 20 at 5; *See also* Offender Orientation Handbook at 73 (VIII. B.). Second, Plaintiff failed to exhaust all of his claims sufficient to give TDCJ officials the time and opportunity to address all claims internally. *See Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)) (In addressing how much detail is required to provide notice of a prisoner's problem, the Fifth Circuit has held that the exhaustion requirement must be interpreted "in light of its purposes, which include the goal of giving officials 'time and opportunity to address complaints internally.'"). Plaintiff at no point identifies the "chilling of speech" of both himself and those that would write to him (D.E. 16 at 10), his concerns regarding a lack of due process for the destruction of physical mail after being scanned (D.E. 20 at 12), nor the concern that his speech and the speech of individuals that would write to him is being chilled *specifically* due to the fear that digitized mail communications "indefinitely" stored on the internet could be "vulnerable to hackers." D.E. 31 at 5-7; D.E. 35 at 3-5). The Step 1 grievance directed TDCJ officials to address only the delay in receiving mail, which is further confirmed by TDCJ's grievance response:

> The Digital Mail Processing Center is backlogged with mail. TDCJ is sending staff
> weekly to assist in the processing. Staff are working tirelessly to process the mail in a
> timely manner and no delay is intentional. No further action warranted by this office.

See D.E. 20 at 6 (Grievance Response).

Finally, and most significantly, Plaintiff has failed to exhaust all of his administrative remedies prior to filing suit because he never appealed the response to his Step 1 grievance. In addition to the procedures laid out in the Offender Orientation Handbook, Plaintiff was notified directly underneath the response of his opportunity to appeal such response to his Step 1 grievance:

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to

the Unit Grievance Investigator within 15 days from the date of the Step 1 response.

State the reason for appeal on the Step 2 form.

*See Id.*

Furthermore, while Plaintiff may not be required to plead or demonstrate exhaustion in his

Complaint, the face of the Complaint clearly demonstrates his failure to exhaust the entirety of his

First and Fourteenth Amendment claims by not addressing them at all. *Carbe*, 492 F.3d at 328. Not

only did Plaintiff's failure to grieve deprive TDCJ officials of "a fair opportunity to address [the

actions] that [would] later form the basis of [this] lawsuit," *Butts*, 877 F.3d at 582, it shows the

existence of Defendant's affirmative defense of exhaustion on the very face of the Complaint. *Jones*,

549 U.S. at 214-215. Plaintiff cannot proceed in this Court with his First or Fourteenth Amendment

claims without having first completed TDCJ's two-step grievance process as to each respective

claim. *Favela*, 91 F.4th at 1212; 42 U.S.C. § 1997e(a); *See also*, Offender Orientation Handbook at 74

(Where inmates are instructed to present only one issue per grievance).   Any counterargument by

Plaintiff that the Court should construe his grievances as having "substantially complied" with

TDCJ's administrative remedy procedure (e.g. that grieving the delay in receiving a digitized copy of

his mail should be construed as implicitly grieving all the events and incidences connected with the

digital mail policy) must fail. As the Fifth Circuit has explained, not even substantial compliance

meets the "strict approach" standard to satisfy exhaustion. *Butts*, 877 F.3d at 582. Rather, prisoners

must exhaust administrative remedies properly. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

Likewise, any counterargument that the Plaintiff was unable to grieve due to the grievance procedure

inevitably resulting in a "dead-end" should be disregarded because the Plaintiff did not even attempt

to complete his exhaustion requirement by filing a Step 2. So long as the TDCJ's administrative

procedure grants "authority to take some action in response to a complaint," that procedure is

considered available, even if it cannot provide the particular "remedial action an inmate demands." *See Booth v. Churner, 532 U.S. 731*, 741 (2001).

If the Plaintiff has trouble using the grievance system, he also has access to an "Offender Request to Official (I-60) Form," where offenders can ask for help from specific departments. *See* Offender Orientation Handbook at 70.[3] If it is unknown which department or individual the I-60 should be addressed to, the Chief Unit of Classification has been appointed as the point of personal contact for all offenders and shall provide assistance as needed. *See* Offender Orientation Handbook at 70. On the face of Plaintiff's compliant, it is apparent that no such attempts were made to utilize the administrative remedies available to him.

Defendants respectfully ask that the Court dismiss both the First Amendment and Fourteenth Amendment claims under Rule 12(b)(6), as none of the claims have been properly exhausted to completion under the PLRA's requirements, *Gonzalez*, 702 F.3d at 788, and as such dismissal at the 12(b)(6) stage is authorized by the Fifth Circuit, *Jones*, 549 U.S. at 214-215.

**B. Plaintiff's requested injunctive relief falls outside the scope of both *Ex parte Young* and the PLRA.**

The Supreme Court in *Ex parte Young* set forth a narrow exception to Eleventh Amendment immunity allowing prospective injunctive relief through official-capacity actions. 209 U.S. 123, 159-60 (1908). Even where the *Ex parte Young* exception applies, however, injunctive relief is "to be used sparingly, and only in a clear and plain case." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quotation omitted). This is because government agencies are to be granted "the widest latitude in the dispatch of its own internal affairs." *Id.* at 378-79 (quotation omitted). An inmate's requests for injunctive relief must also be viewed in conjunction with the requirements of the Prison Litigation Reform Act ("PLRA"), which permits injunctive relief only if it is "narrowly drawn, extends no further than

---

[3] *See* https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf

necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a).

Plaintiff's claims for injunctive relief falls well outside these parameters. First of all, Plaintiff does not demonstrate that there was any violation of a federal right that could be rectified by an injunction. *See* Section III.C., *infra*. Further, even assuming *arguendo* that some federal right was violated, his requested injunction— in sum, abolishing the digitized mailing policy in its entirety and essentially demanding the severance of the contract between TDCJ and Securus—is neither "narrowly drawn" nor the least intrusive means necessary to correct that violation. Accordingly, Plaintiff's requested injunction is barred by *Ex parte Young* and the PLRA.

## C. Plaintiff has not stated a constitutional violation.

### 1. Plaintiff has not stated a First Amendment claim.

It is well settled that "a prison inmate retains those [First Amendment] rights that are not inconsistent with his status as a prisoner." *Turner v. Safely*, 482 U.S. 78, 95 (1987) (quotations omitted). A prison may impose regulations and policies that impinge on a prisoner's First Amendment right if they are reasonably related to a legitimate penological interest. *Brewer v. Wilkinson*, 3 F.3d 816, 820-26 (5th Cir. 1993). "The Fifth Circuit has long held that inmates do not possess a right to the unrestricted freedom of receipt and transmission of mail." *Abney v. Sifuentes*, No. 2:19-CV-121, 2019 WL 8512461, at *8 (S.D. Tex. Aug. 12, 2019) (citing *Adams v. Ellis*, 197 F.2d 483, 485 (5th Cir. 1952)), report and recommendation adopted, No. 2:19-CV-121, 2020 WL 1939681 (S.D. Tex. Apr. 21, 2020). Prisoners and their correspondents "enjoy the protections of the First Amendment except to the extent that prison regulations curtailing those protections are 'reasonably related to legitimate penological interests." *Spence v. Nelson*, 533 F. App'x 368, 371 (5th Cir. 2013) (citations omitted). Courts review prison policies that infringe on fundamental constitutional rights

under a deferential standard. *Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007) (citing *Turner v. Safley*, 482 U.S. 78 (1987)).

In analyzing whether a regulation is "reasonably related," a court must consider four factors: (1) whether the regulation is "rationally related" to a legitimate penological goal; (2) whether alternative means of exercising First Amendment rights remain open; (3) the impact that accommodating the asserted right will have on other prisoners and prison employees; and (4) whether there are easy and obvious alternative means of accommodating the asserted right. *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989). "[R]ationality is the controlling factor, and a court need not weigh each factor equally." *Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 607 (5th Cir. 2008).

### a. Rational relationship between the digital mailing policy and penological interests.

BP-3.91 has been held to be rationally connected with a variety of legitimate governmental interests justifying it. *See* Leachman v. Stephens, No. 02-13-00357-CV, 2016 WL 6648747, at *26 (Tex. App. Nov. 10, 2016). Such justifications include the ability to limit the flow of drugs and other contraband into the prison. *See* Lopez v. Lumpkin, No. 4:20-CV-3307, 2022 WL 18399530, at *2 (S.D. Tex. Nov. 22, 2022), reconsideration denied, No. 4:20-CV-3307, 2023 WL 348338 (S.D. Tex. Jan. 20, 2023) (explaining, "in *Renfro v. Baker*, Civil Action No. H-21-2172, 2021 WL 4861802 at *2 (S.D. Tex. Oct. 13, 2021), the court found the plaintiff inmate was unlikely to succeed on the merits of his challenge and therefore denied plaintiff's motion for an injunction because the policy 'prohibiting or limiting card-stock or other papers that are used to smuggle drug' is reasonably related to the legitimate interest of stopping the flow of drugs and contraband into the prison." ).

The connection between digitizing mail to limit the amount of various forms of contraband from entering the prison, and maintaining prison security, is rational for the same reasons discussed

in *Renfro* regarding card-stock.  *See Renfro v. Baker*, Civil Action No. H-21-2172, 2021 WL 4861802 at *2 (S.D. Tex. Oct. 13, 2021).  In *Lopez*, it was determined that "in 2021 alone, there were more than 870 items, mailed to inmates across TDCJ facilities, that tested positive for drugs. Often, such contraband comes in the form of a seemingly innocent piece of paper soaked in K2 or bearing traces of other illicit substances." *Lopez,* at 3. Further, the *Lopez* court reasoned that simplifying the inspection process, which was done by hand, was designed to improve inspections and the identification of contraband. *Id.*  Likewise, the updated BP3.91 policy, which includes the new change to digitized mail,[4] presents the ability to limit multiple forms of contraband,[5] not just drugs as the Plaintiff presumes. To name a few examples, such contraband stands to include drugs, physical cell phones, and banned sexually explicit material.

The Fifth Circuit has determined on multiple occasions that prison policies preventing the dissemination of sexually explicit materials are rationally related to legitimate penological interests, and this rationale extends to the implementation of the digital mail policy to achieve such results. In *Stroble v. Livingston*, the Fifth Circuit rejected an inmate's First Amendment claim challenging a prison policy prohibiting possession of sexually explicit images. 538 F. Appx. 479, 480 (5th Cir. 2013).  In *Ji v. O'Daniel*, the Southern District Court not only recognized the penological interest in reducing trafficking and trading of sexually explicit images by confiscating them based on a BP- 3.91 policy but **suggested that the future flow of those items were likely to be reduced by the implementation of the digital mailing policy**. *Ji v. O'Daniel,* No. CV H-21-2663, 2023 WL 8295923, at *4 (S.D. Tex. Oct. 3, 2023), <u>appeal dismissed,</u> No. 23-20571, 2024 WL 2264229 (5th Cir. Mar. 21, 2024).

---

[4] See BP-391 (rev 7) at 6-7 https://www.tdcj.texas.gov/documents/policy/BP0391.pdf
[5] See BP 3.91 at 2, defining "'contraband,' for the purpose of inmate correspondence as any physical item that in inmate is not permitted to receive through incoming mail, including but not limited to items that present a threat to the safety or security of staff, inmates, institution, or public; this does not include any written material disapproved for its content."

More penological interests for using a digital mail center and implementing a digital mail policy are identified on the Securus website. Converting postal mail into electronic communications includes the opportunity to dramatically improve investigative intelligence, provide immediate notifications to staff and investigators when particular incarcerated individuals receive mail, and reduce staffing costs by allowing the relocation of staff to other critical areas. [6] In addition to the digital mailing center provided by Securus, TDCJ also contracts with Securus to provide tablets with e-messaging[7] at all TDCJ facilities.[8] The use of e-messaging allows the Plaintiff and other inmates other opportunities to communicate directly with friends and family, and to maintain a connection to the free-world.

### b. Alternative means to exercise the right in question.

Access to e-messaging also contributes to the second factor, which is the availability of alternative means to exercising the right in question (here, the First Amendment right to receive and send communications with members of the free world). "In evaluating the availability of alternatives, the Supreme Court has emphasized that the right in question must be construed 'expansively,' meaning that adequate alternatives need not be perfect substitutes for the curtailed right." Prison Legal News v. Livingston, 683 F.3d 201, 218–19 (5th Cir. 2012). The ability to send and receive mail in order to communicate with friends and family, is not the only means of communication inmates have with the free world – Plaintiff and other inmates may also communicate through e-messaging, phone calls, and in-person visits. Further, not all mail is digitized under the new digitized mail policy – only "General Correspondence" – whereas Legal, Special, Media Correspondence, Publications

---

[6] See https://securustechnologies.tech/corrections/communication/digital-mail-center/

[7] See BP-3.91 at 2: "'e-message' is an electronic written communication sent to or from a TDCJ inmate. This communication shall be treated in the same manner as incoming general correspondence."

[8] https://www.tdcj.texas.gov/divisions/cid/mgmt_ops_mscp.html

sent directly from authorized sources, and Business Correspondents are still accepted by TDCJ facilities addressed to inmates via regular and certified mail.[9] Moreover, a "general Correspondent" may send a document requiring the inmate's signature to the inmate in care of the law library at the inmate's current unit of assignment.[10]

Given that rationality is the most significant factor, and it weigh heavily in favor of Defendant, the court should rule that the Plaintiff has failed to sufficiently state a First Amendment claim relative to the digital mailing policy.

### 2.  Plaintiff has not stated a Fourteenth Amendment due process claim.

"When a prisoner's property is confiscated pursuant to prison policy, the constitutional requirements of due process are satisfied so long as the prisoner is afforded ample notice and is given an opportunity to object to the confiscation."  *Allen v. Thomas*, No. H-02-3132, 2005 WL 2076033, at *9 (S.D. Tex. Aug. 26, 2005).  *See also Guarjardo v. Estelle*, 580 F.2d 748, 762, n.10 (5th Cir. 1978) ("An inmate receives sufficient review of the administration's decision not to permit the [media item] if he receives (1) appropriate notice, (2) a reasonable opportunity to challenge the initial decision, and (3) an ultimate decision by a disinterested party not privy to the initial censorship decision.").

Applying this standard, at least three courts have held that the updated BP-03.91 provides constitutionally sufficient due process protections. *See Thompson*, 2022 WL 4110926, at *10; *McCullough*, 2022 WL 3219802, at *8-9; *Strong v. Lumpkin*, No. 2:21-cv-261, 2022 WL 3362944, at *10-11 (S.D. Tex. July 13, 2022).  These courts so held because BP-03.91 requires TDCJ to give prompt notice of a confiscation and allows inmates to appeal that confiscation to the DRC ("Director's Review Committee"), a neutral body of appointed TDCJ administrators. *See id.*; *see* also, BP -3.91 at 14-15 (describing appeal procedures related to most recent version of BP-3.91 as it

---

[9] *See* BP-3.91 at 7: https://www.tdcj.texas.gov/documents/policy/BP0391.pdf
[10] *See Id.*

incorporate digital mail).[11] Thus, no procedural due process claim has been sufficiently stated – especially given Plaintiff merely *assumed* there was no due process procedures, without actually exploring those available to him.

### D. Plaintiff has not stated a substantive due process claim.

In order to state a constitutional claim for a substantive due process violation, a plaintiff must demonstrate that he was "denied a cognizable liberty or property interest clearly established either by state law or the United States Constitution." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir.2000); *accord Sandin v. Conner*, 515 U.S. 472, 481–83 (1995). Prisoners' liberty interests "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S 472, 484 (1995). As for prisoners' property interests, the law is clear that "[p]rison officials may obviously impose reasonable restrictions on the type and amount of personal property inmates are allowed to possess in prison[.]" *McCrae v. Hankins*, 720 F.3d 863, 869 (5th Cir. 1983). To the extent Plaintiff bases his claim on access to physical copies of his mail – as opposed to digital access to mail communications – there is no protected liberty interest that specifies mail must be available in physical form if alternatively provided in digital form. Finally, to the extent Plaintiff bases his claim on unsuccessful resolution of his Step 1 grievance, that claim must fail because inmates do not have a federally protected liberty interest in having grievances resolved to their satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Accordingly, Plaintiff's complaint, taken as true, does not state any possible violation of substantive due process to the extent he tries to imply that argument.

### IV.    <u>CONCLUSION</u>

For the reasons stated above, Defendants pray the court grant the Judgement on the pleadings pursuant to 12(b)(6) standards – made applicable through the vehicle of 12(c) – stating

---

[11] *See* https://www.tdcj.texas.gov/documents/policy/BP0391.pdf

that Plaintiff has failed to exhaust his administrative remedies, has failed to request injunctive relief pursuable via the PLRA, and has failed to state both First Amendment or Fourteenth Amendment claims.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Chief, Law Enforcement Defense Division

*/s/ Shana Sobel*
**SHANA SOBEL**
Assistant Attorney General
Texas State Bar No. 24135779
Southern District No. 3870460
shana.sobel@oag.texas.gov
Work Phone: 512-936-1292

Law Enforcement Defense Division
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, TX 78711-2548
(512) 463-2080 / (512) 370-9814 (fax)

**ATTORNEYS FOR DEFENDANTS**

**NOTICE OF ELECTRONIC FILING**

I, **SHANA SOBEL**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing a true and correct copy of the above and foregoing **Defendants' Motion for Judgement on the Pleadings Pursuant to 12(b)(6) and 12(c)** was filed in accordance with the Electronic Case Files System of the Southern District of Texas, on December 27, 2024.

/s/ *Shana Sobel*
**SHANA SOBEL**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **SHANA SOBEL**, Assistant Attorney General of Texas, certify that a true and correct copy of the foregoing **Defendants' Motion for Judgement on the Pleadings Pursuant to 12(b)(6) and 12(c)** has been served by placing same in the U.S. Mail, certified mail, within one business day of December 27, 2024, addressed to:

James Logan Diez, TDCJ#02399291                    Via Certified Mail
McConnell Unit
3001 S. Emily Drive
Beeville, TX 78102
*Plaintiff Pro se*

/s/ *Shana Sobel*
**SHANA SOBEL**
Assistant Attorney General