UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States Courts Southern
District of Texas
FILED

JAN 15 2025

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| JAMES LOGAN DIEZ, | ¶ |
| | ¶ |
| Vs. | ¶  No. 2:23-CV-00269 |
| | ¶ |
| TDCJ-CID, et. al. | ¶ |
| | ¶ |

PLAINTIFF'S RESPONSE TO DEFENDANT COLLIER'S
MOTION FOR SUMMARY JUDGEMENT ON THE PLEADINGS

To the Honorable Judge of said Court:

 Comes now Plaintiff herein and respectfully presents the following Response to Defendant Collier's Motion for Summary Judgment, and in support hereof would show the following:

I. STATEMENT OF THE CASE:

 Plaintiff disputes Defendant's summary with regards to his **FOURTEENTH AMENDMENT** Due Process claim. The Complaint did/does **NOT** assert he was denied Due Process to challenge the digitalized mail's **general policy**, per se; rather the assertion is he is/was denied Due Process to challenge **the seizure and destruction of EACH article of HIS personal postal Mail** without proper lawful proceeding for such seizure and destruction **without** a showing of how THAT specific article of mail violated some Law/Prison Rule and/or presents some threat to prison security and/or operations. Government cannot simply seize and destroy an entire group's personal property just because a miniscule number within that group used some article of THEIR SEPARATE personal property to commit a crime/rule violation [**unless** the government shows the entire group was involved through some conspiracy]. Such might be permissible in a Fascist Tyranny, but NOT TO BE TOLERATED in a Democratic Republic of Free Citizens.

II. STANDARD OF REVIEW:

 (1) Plaintiff would vigerously assert here: this Case is a matter of **FIRST IMPRESSION** due to the Fact there is very little to NO Case Law **specifically** addressing a literal **Profit Sharing Partnership** formed between a government Entity and a Private Sector Corporation leading to the violation of a Citizen's constitutional Rights.

-- 1 --

   (2) At the filing of the Original Complaint form, this Plaintiff was unaware of a great deal of Facts that have been reveaalled to him through the ongoing Discovery. For example: the <u>EXTORTION-like</u> practice of the Defendants' partner [Securus Technologies (Securus)] in harvesting their Users' Personal Information by requiring the User surrender their Right to Privacy under the <u>FOURTH AMENDMENT</u> in order to be allowed to use the ONLY available venue of communicating long-distance with a TDCJ-CID Prisoner. None of these Facts were even known to this Plaintiff at the time of filing the ORIGINAL §1983 Complaint form.

   (3) Defendants' Counsel's <u>Standard of Review</u> statement is premised on Case Law that presumes a Plaintiff <u>had access to</u> all or most relevant Facts — hence, that more precise claims referencing/documenting those Facts should be included in the initial pleadings.

<u>NONETHELESS</u> — Plaintiff herein would ask the Court <u>DELAY</u> any Summary Judgment <u>on the Pleadings</u> until certain germaine questions of Law can be answered (which questions shall be presented infra).

III. Defendants' assertion on <u>'FAILURE TO EXHAUST"</u> any required 'Administrative Remedies' under the PLRA.

   (A) The Court should be informed of the <u>FACT</u> that the TDCJ <u>CRIMINAL INSTITUTIONAL DIVISION</u>'s 2-Step Grievance System <u>DOES NOT EXIST FOR THE ISSUES IN THIS CASE</u>. Either Defense Counsel has been mislead; or, Counsel attempts to deceive this Court.

      (1) the TDCJ (Texas Department of Criminal Justice) has <u>3 separate Divisions:</u> Community Justice Division; Parole Division; and, <u>Criminal Institutional Division</u> (CID). Each Division has its own system for resolving grievances <u>which arise in</u> and are <u>under the control of</u> that Division. Each grievance resolution system <u>APPLIES ONLY</u> to things that happen <u>IN THAT DIVISION</u>'s domaine and <u>under ITS control.</u> The Contract creating the partnership between TDCJ and

    Securus to digitalize and destroy Plaintiff's Original mail took place in the Texas Board of Criminal Justice/Prison Board's (Board) <u>EXECUTIVE OFFICES</u>; and, the actual digitalization and destruction of Plaintiff's Original Mail takes place at the <u>PRIVATE PROPERTY of Securus</u> in Dallas, Texas. The CID of TDCJ (CID Agency) has <u>ABSOLUTELY NO CONTROL OVER</u> anything going on in either the Board's Executive Offices and/or at a Private Sector Company's private facility in Dallas ... ergo, the 2-Step Grievance System has utterly NO CONTROL over nor application to the issues complained of in this Case;

\*\*\* See the TDCJ-CID <u>Grievance Procedures,§VIII.F.5</u> >>> "You may <u>NOT</u> GRIEVE: (...); 5. any matter beyond the control of the Agency [i.e. CID Grievance Office] to correct." The CID Grievance Agency has **absolutely no Authority** to intervene in a Private Sector's operation at its private facility under a Contract with the Prison Board.

    Additionally, even if the Court were to presume the CID COULD USE ITS <u>Divisional specific</u> grievance system to command a Private Sector Company to stop destroying the Plaintiff's original articles of personal postal mail; <u>Griev. Pro.§VIII.F.4</u> clearly states:"You may NOT grieve matters for which other appeal mechanisms exists;(...)." And, the TDCJ-CID, with the Board's approval, has established that matters <u>related to correspondence</u> MUST be appealed <u>through the Director's Review Committee</u> (DRC); and, the DRC established <u>"Board Policy" is NOT appealable.</u>
Ergo, <u>THERE ARE NO</u> "Administrative Remedies" by which Plaintiff can challenge the digital mail CONTRACT entered into with Securus by the Prison Board, and/or the way Securus processes and destroys Plaintiff's original articles of personal postal mail inside the private facility of Securus in Dallas under the terms of the partnership Contract with the Texas Board of Criminal Justice.

  (B) Relief requested allegedly fall[ing] outside the scope of both <u>Ex Parte Young, 209 U.S. 123(1908)</u> and the PLRA.

<u>Young</u>, decided over 116 years ago, was well before the Age of digitalized mail/Internet/computers, and did not even address the type of circumstances existent in this Century of the proliferation of Private Sector Companies' involvement in Penal Operations — especially not when such company <u>has formed a Profit Sharing Limited Partnership Contract with a government agency</u>.

EVERYTHING Plaintiff complains of in his Original Complaint has and is occuring OUTSIDE the Prison Facility.

(a) the U.S.P.S. conveys the original articles of personal Mail <u>NOT</u> to the penal facility, but to the Private Sector Company/Partner's Private Sector processing center in a city that doesn't even have a Criminal Institutional Division facility located in it;

(b) that Private Sector Company scans the article of mail (while using AI to extract the Senders' Personal Information and other 'marketable data'); stores the Original article of Mail for 90 days; <u>then destroys it</u>; and,

(c) after the original article is scanned, a digital <u>image</u> of the original is sent to the Prison Unit Mailroom's computer to be visually scanned by Prison Staff; only AFTER the Prison Staff approves the <u>digital image</u> is that image sent to the Prisoner's tablet for access by the Prisoner [assuming they have a working tablet and the Securus modem is working].

The issues in this litigation arise BEFORE the Penal Institution Staff ever get involved. [Which is WHY the CID's Grievance System doesn't even apply.]

<u>NO</u> U.S. Supreme Court ... <u>NO</u> Federal Appellate Court ... and, <u>NO</u> U.S. District Court has <u>ever</u> considered or addressed how the <u>Court-created ELEVENTH AMENDMENT</u> Immunity should or should NOT be applied to State Officials/Agencies which are <u>acting in contracted partnership with</u> a Private Sector Company for a <u>Gross Profit share</u> return to the State Agency.

<u>AGAIN, THIS IS A CASE OF FIRST IMPRESSION.</u>

(i) TDCJ collects +/- 40% of Securus's <u>Gross</u> Profits from its TDCJ-CID <u>related</u> sales of products and services to TDCJ-CID Prisoners <u>and/or ANY and ALL</u>

Free Citizens who want to communicate; with Texas Prisoners by postal letter, eMessages, or phone from outside the penal facility proper;

(ii) when Securus fell behind on its getting the postal Mail processed; TDCJ STAFF were sent to the Securus Digigal Mail Processing Center in Dallas to labor beside Securus Employees to process the backlog of Postal Mail.

The Prison Board did NOT simply give Securus Funds to do a job — it gave Securus Funds to conduct a monopolized business inside the TDCJ-CID, and give TDCJ a share of the Gross Profits from that business — then, provided State Employees to do labor for Securus to get that business done. THAT CONSTITUTES A PARTNERSHIP.

So ... do State Actors even have a right to claim ELEVENTH AMENDMENT Immunity when they basically act as a Private Sector Company's partner for a Gross Profit share of +/- 40%? Would that NOT be just a wee stretch even in a Capitalist Government?

(C) Plaintiff's Statement of Constitutional Violations.

(1) FIRST AMENDMENT Claim:

The U.S. Supreme Court has clearly stated that "the Constitutional violations [can also] arise from the deterent, or 'chilling', effect of government regulations." Laird v. Tatum, 408 U.S. 1, 11(1972); Speech First, Inc. v. Sands, 144, S.Ct.675, 676(2024).

This Court has already determined that this Plaintiff, "has alleged sufficient facts giving rise to a plausible FIRST AMENDMENT claim through the new policy's alleged unjust interference with and chilling effect on his ability to communicate with individuals interested in his writings;" Diez v. Tex.Dept.Crim.Just.-CID, 2024 U.S. Dist. LEXIS 61676 at *16 (S.D. Tex.-Corpus Christi 2024) This 'chilling effect' is even more substanially supported by the Fact that Securus excessively and intrusively harvests an unprecidented amount of Personal Information from its services Users in an EXTORTIVE manner.

So, Defendants' assertion there has not been any FIRST AMENDMENT Claim is without merit and frivolous.

-- 5 --

Sec. C.1(a) Relationship between mail policy and
             Penological Interests.

Defendants' **primary** focus in their Motion for Summary Judgment is, as expected, the interdiction of drugs through the mail. The Plaintiff asserts such is EXAGGERATED SOLELY TO GIVE DEFENDANTS AN EXCUSE to Contract with Securus **for a profit sharing venture**. The Fact of exaggeration is readily evident from the Defendants' own Motion at Bar ...

   * Motion §C.1(a) at page 12 >>> "In Lopez [v. Lumpkin, 2022 WL 18399530 at *2] it was determined 'in 2021 alone, there were **more than 870 items** mailed to inmates **across TDCJ Facilities** that tested positive for drugs'." [PLEASE NOTE THE FACT that there is no indication as to specific "drugs" nor to the amount present on the paper. A "test" for drugs on a smear might contain merely a trace residule from the fingertip of someone who'd just taken some prescription medication containing opiates?]

   Put this sentence in **realistic** context and perspective rather than sensationalized for Public consumption. There are (98) TDCJ Facilities operational housing Prisoners "across TDCJ Facilities". There are approximately 150,000 Inmates in those Facilities.

   A] **HYPOTHESIZE** that EVERY Prisoner received ONLY ONE article of personal mail each in 2021 — that means **only 0.058%** of the Prisoners who received personal letters in 2021 had a drug contaminated letter ... BUT ... **99.042%** of the 2021 Inmate Population were **NOT** receiving such letters that year.

   B] Is it a "legitimate", "rational", and **UNEXAGERATED** response to **0.058%** Rule Violators to punish **99.042%** of Rule Obeyers?

Unless Defendants propose to present credible data that the 870 articles of drug contaminated Mail in 2021 represents some miniscule fraction of **mailed-in** drugs ... most of which were never detected ... Plaintiff asserts the **40% of Gross Profits** Defendants are reaping in from Securus **is the most probable true motive** for Defendants implementing the digital mail policy [and Plaintiff is prepared to present credible evidence at Trial that as far as

drugs getting into the Texas Prisons, Officials actually have very little concern and make no significant effort to do anything about chronic drug abusers openly using such and staying utterly 'wasted' in plain sight of Security Guards and other employees with no consequences].

As to Defendants' assertion the digitalized mail policy "presents the ability to limit multiple forms of contraband (...) such as **physical cell phones and banned sexually explicit material;**" Plaintiff would ask, 'is Defendants Counsel attempting to be sarcastic or fascious?'

* **Cellphones** ... it cannot be even seriously given consideration that one could even attempt to try to smuggle a cellphone into a prison inside a personal letter! It would be necessary to send it in a box or large packet; which would be opened in the mailroom and immediately rejected and seized.

* **Sexually explicit material** ... 'dirty photographs' would be immediately apparent as soon as the Staff in the Mailroom opened the paper for a visual scan; and, sexually explicit text (like a Wife telling her Husband or whatever what she'd like him to do to her) the Plaintiff would argue isn't the type of material that would be subject to censorship in the first place(?). Either way, the ease with which dirty photographs and explicit speech can be caught by Prison Mailroom Staff negates the weight defendants seem to want this Court to give this type of contraband sufficient to outweigh Prisoners **and FREE CITIZENS'** Rights to Freedom of Speech and Hearing under the **FIRST AMENDMENT**.

*** Plaintiff would reassert the point: **EVEN WITH DIGITALIZED MAIL**, Criminal Institutional Division Mailroom Staff **MUST STILL OPEN AND VISUALLY SCAN** each and every eMessage sent to Prisoners before those digital letters and eMessages are released to the Prison tablets for the Prisoners to view.

So, having digitalized mail does **NOT** decrease the work load on Mailroom Staff; they still have to open and scan the same number

of correspondence ... they just open and scan it on a computer screen now [PLUS they now, also, have to open and scan eMessages].

As to Defendants' assertion that, "converting postal mail into electronic communications includes the opportunity to <1> dramatically improve investigative intelligence, <2> provide immediate notification to Staff and Investigators when particular incarcerated individuals receive mail; and <3> reduce staffing costs by allowing the relocation of Staff to other critical areas"...

<1> if "investigative intelligence" translates into 'harvesting every shred of Personal Information; likes; dislikes; habits; bio-data; and, language patterns of Prisoners and Free Citizens who uses Securus services,' then Plaintiff suggests that the extortionist methods used to gather that bit of "intelligence" is offensive to the FOURTH AMENDMENT:

<2> if some "particular incarcerated individuals" receipt of mail is so time sensitive of interest to "Investigators" — commonsense informs the wise Jurist that delivery to the Unit Mailroom would place that article of mail in Prison Staff hands FASTER than having it relayed and processed through Securus; and, once in Prison Staff hands, a simple phone call would alert 'Investigators' BEFORE delivery to the Prisoner is even made; and,

<3> again, this is just plain FALSE — Unit Mailroom Staff MUST STILL visually scan the digitalized mail the same as they did the physical original mail ... so TDCJ-CID can NOT "relocate staff to other areas," because in addition to still having to open and visually scan digitalized postal mail, the Mailroom Staff now also bears the responsibility for visually scanning every eMessage sent to the Prisoners on their tablets. If anything, it has lead to the assigning of ADDITIONAL Staff to Unit Mailrooms to cover the added eMessage scan.

\*\*\* The Court should NOTE: there, IS, of course, one area where a number of TDCJ Staff were relocated due to the digitalized mail policy being in effect ... when TDCJ "relocated" TDCJ

Staff to Securus Digital Mail Processing Center to work for Securus to help Securus Employees clear up their backlog.
¶¶ Plaintiff would question the legality and propriety of assigning TDCJ Staff to work at a Private Sector Company's facilities (even if the TDCJ is a Profit Sharing Partner with Securus).

MOTION §C.1(b) at page 13: "Alternative means" by which Plaintiff can exercise the FIRST AMENDMENT Right to Freedom of Speech/Hearing.

Plaintiff would point out that this grievance with the new digitalized mail policy arose NOT because there wasn't "alternative means" by which he and the People who would like to communicate with him weren't offered several ways to do so ... the grievance is two-fold:

1] ALL of those "ALTERNATIVE MEANS" are NOT ACCEPTABLE under the current Policy, because in order to USE those 'alternative means' [eMessages &/or phone calls] Free Citizens MUST SURRENDER THEIR Personal Information to being mined and harvested by Securus, and shared with all Securus partners, associates, service providers, etc. ... which has an EXTREMELY chilling effect on Free Citizens willingness to communicate with Plaintiff; and, exposes BOTH the Plaintiff's AND FREE CITIZENS" Personal Information to an expotential risk of being Hacked; and,

2] the fact Securus is DESTROYING Plaintiff's original articles of mail AGAINST HIS WISHES and without any Due Process offered for him to challenge that arbitrary destruction.

CONSIDER THE FACTS:

[I] The Texas Board of Criminal Justice has given Securus exclusive monopoly over TDCJ-CID Prisoners postal mail, eMessages, and telephone calls;

[II] NO FREE CITIZEN can communicate with Plaintiff on a personal basis unless that Citizen uses Securus Services (or drives to Beeville, Texas, for face-to-face physical visit; and, Visitor Lists is restricted to 10 People over 14 yrs).

[III] NO Securus service can be used UNLESS the Free Citizen gives up their FOURTH AMENDMENT Privacy Right and allows

-- 9 --

        Securus to harvest their Personal Information.

[IV] Ergo, <u>FREE CITIZENS</u> MUST CHOOSE to deny their Privacy Right in order to exercise their Free Speech Rights to communicate with Plaintiff ... <u>THAT IS EXTORTION</u>: and, through that 'chilling effect', it deprives Plaintiff of his Right to <u>HEAR</u> what those Free Citizens speech to hime might be.

Readers of Plaintiff's Essays (and others who wish to communicate with him), especially those in High School and College who composed approx. 85% of the Readers corresponding with Plaintiff <u>PRIOR TO</u> digitalized mail by Securus, are not at all inclined to give up <u>THEIR</u> Right to Privacy of their Personal Information just to share questions, thoughts and comments with Plaintiff ... <u>NOR SHOULD THEY HAVE TO</u> give up their <u>FOURTH AMENDMENT</u> Rights in order to exercise their <u>FIRST AMENDMENT</u> Rights ... and, Plaintiff should <u>NOT</u> have to give up his Right to <u>HEAR</u> what those People would say just so the Defendants can reap <u>40% of Securus' Gross Profits</u>.

    Further, just because Plaintiff still receives <u>GENERAL, NON-Personal</u> Mail physically at his Unit, it <u>does NOT decrease the VIOLATION</u> of his <u>FIRST AMENDMENT</u> Right to HEAR WHAT PEOPLE WANT TO SAY TO HIM PERSONALLY, whether about his Essays or their shared Religious Beliefs, or simply the ramblings of a Friend/Loved One.

      \*\*\* What GENERAL Correspondents may or may not say, that reaches Plaintiff directly without digitalization, has absolutely NO bearing on what PERSONAL Correspondents might say <u>IF THEY ARE NOT CHILLED FROM DOING SO</u>.

<u>MOTION §C.2 at page 14</u> >>> Plaintiff stated a Claim on <u>FOURTEENTH AMENDMENT</u> Due Process.

    To begin — the Court should take notice of the Fact that neither <u>Allen</u>, <u>Guajardo</u>, nor any like cases would be applicable to the Case at Bar. The property seizures in those Cases were effected by PRISON Officials/Employees <u>INSIDE THE PRISON COMPOUND.</u> Whereas, the seized and destroyed property of Plaintiff was and is being seized and destroyed <u>in a Private Sector Facility, and is operated by a Private Sector Company UNDER A PROFIT SHARING CONTRACT</u> with <u>NO</u> Due Process to Justify the seizure or destruction of this Plaintiff's <u>ORIGINAL Personal Mail</u>.

The TBCJ has NEVER shown a single article of Plaintiff's Mail contained ANY FORM of illegal content/substance/contraband, NOR has it been shown that ANY of the seized/destroyed mail in the Securus Facility in Dallas even contained/contains something prohibited by a TDCJ-CID Correspondence Rule — NOR has Plaintiff been afforded any means of challenging destruction of those articles of Personal Mail.

* BP-03.91 (which Plaintiff has no access to) DOES NOT APPLY to the issue in this Suit, because the appellate avenue of confiscation/denial of mail covered under said Policy applies ONLY to what ENTERS THE PRISON MAILROOM — NOT to physical letters which STOPS AT the Securus Facility in Dallas, TX.

> FOR EXAMPLE: say a Prisoner's Girlfriend/Wife sends him a photograph of herself topless on the beach by U.S.P.S. First Class Mail; it goes to the Securus Facility in Dallas, gets scanned and digitalized, then the digital copy is forwarded to his Unit Mailroom, and the ORIGINAL is held in the Securus Facility where it will be DESTROYED after 90 days if he doesn't have it sent to someone on the outside.
> The Unit Mailroom will, of course, DENY the digital image due to the bare breasts; and, the Prisoner CAN appeal the Mailroom's denial of the digital image. HOWEVER, say the Lady passes away and that was the last image he has of her: he certainly won't want to send it to anyone else due to it's intimate nature, AND HE CAN'T APPEAL IT'S DESTRUCTION, because there's no process provided to do so. Either he has it sent to someone else before the expiration of the 90th day or it gets destroyed. That's it ... NO DUE PROCESS.

Guajardo and similar cases were concerned with PRISON OFFICIALS giving Prisoners Due Process for their property taken INSIDE THE PRISON; they are not applicable to property taken/destroyed by a Private Sector Company at that Company's private facility under some contract with the Prison Board. And, because it is literally a "Profit Sharing Limited Partnership" de facto, and there are NO Case Laws addressing such, it is uncertain exactly what Laws DO apply? 42 U.S.C.S.§1983 or §1985 — or some Section of the Trade, Commerce, or Consumer Protection Regulatory Statutes? Unless and until the Record in this Case is more fully developed to allow the Court to determine exactly WHAT Laws apply to its decision; any Summary Judgment on the Pleadings to date would be inappropriate.

NOTE: As to Section D of Defendants' Motion for Summary Judgment on the Pleadings ... it has been "clearly established Law" for almost a Century that articles of First Class Mail are the rightful **personal property** of [1] the U.S. Postal Service **while in transit**; [2] the intended Recipient once released from Postal possession; and, [3] the Sender if it is undeliverable to the Party to whom it is addressed.

This axiom of Law is so well known and understood by even the common people that it need not even be addressed by this Plaintiff.

### ±±±±± C O N C L U S I O N ±±±±±

Plaintiff, again, asserts this is a Case of FIRST IMPRESSION which would not be properly granted Summary Judgment on the present pleadings — at least not unless/until the Laws governing the unique circumstances have been clearly established by the Court; and, Plaintiff perhaps be given opportunity to Amend to comport with those Laws.

The FACTS this Plaintiff only learned of through Discovery, Plaintiff will admit, **has** raised a question on whether or not:

> (1) the Criminal Institutional Division, of the TDCJ, is properly involved **since none** of the constitutional violations actually took or take place **inside a CID Facility**; and,
>
> (2) **§1983** is the appropriate statute under which this Action should even be proceeding; or, should it be under §1985, or perhaps under RICO, or some Regulatory statute of Trade, Commerce, Consumer Protection, or what?

The Answers to these Questions and more **need** to be determined by the Court; and, to be sure such are accurately answered, since there is no Case Law decisions Plaintiff can find on point, the Plaintiff asserts further development of the Record through the Discovery and/or stipulated Facts is necessary.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays the Court to **DENY** Defendant Collier's Motion for Summary Judgment on the Pleadings; and, that Plaintiff's pending Motions be **GRANTED**; and, that further Discovery be permitted to develope a more comprehensive Record herein.

So prayed for this 13TH day of January 2025.

*/s/ J. Logan Diez*
JAMES LOGAN DIEZ (Pro Se)
2399291   McConnell
3001 S. Emily Drive
BEEVILLE, TX   78102

+ + + + + S E R V I C E + + + + +

I, James Logan Diez, do hereby certify that a true and correct duplicate of this Response to Defendant Collier's Motion for Summary Judgment on the Pleadings has been served to Defendant's Counsel of Record on this the 13th day of January 2025, by U.S. P.S. First Class Mail, postage prepaid, addressed as below:

lady Shana Sobel
Asst. Attorney General
P. O. Box 12548
AUSTIN, TX 78711-2548

*/s/ J. Logan Diez*
JAMES LOGAN DIEZ

-- 13 --